## Mishock v. Erie Insurance Exchange

C.P. of Centre County, no. 2001-1014.

*Kathleen V. Yurchak,* for plaintiff.
*Joseph P. Green,* for defendant.

KISTLER, *J.,* May 28, 2003—On March 7, 2003, a civil non-jury trial was held before this court in the matter of Mylinda Mishock versus Erie Insurance Exchange. At close of testimony both parties requested the opportunity to submit proposed findings of fact and conclu-

sions of the law to the court. As briefs have been received by both parties, the court is prepared to render its decision.

## PROCEDURAL BACKGROUND

(1) On April 27, 2001, plaintiff Mylinda Mishock filed a complaint, which was subsequently amended on June 11, 2001, against defendant Erie Insurance Exchange.

(2) In the complaint, Mishock asserts that Erie breached its contract with Mishock and requests that this court enter a decree directing Erie to pay all of Mishock's outstanding medical expenses, directing Erie to continue to pay Mishock's future medical expenses, and to award attorney's fees to Mishock.

(3) On July 11, 2000, Erie filed an answer with new matter and a counterclaim in which Erie requests that this court enter judgment against Mishock in the amount of U.S. $890 incurred by Erie pursuant to the peer review process.

(4) A one day non-jury trial was held on March 7, 2003.

## FINDINGS OF FACT

(1) On January 9, 1997, Mishock was involved in a motor vehicle accident in State College, Pennsylvania.

(2) At the time of the accident Mishock was insured by Erie under the "Pioneer Family Auto Policy" identified as policy number Q01 2703190H.

(3) Mishock sought medical treatment the day after the accident from a chiropractor, Dr. John Corneal D.C., because she was experiencing "headaches, neck pain,

lower back pain, stiffness in her legs, and pain in her arm."

(4) Mishock treated with Dr. Corneal for several months but was then referred to Eric Rosin D.O., by Dr. Corneal "because improvement was minimal relative to the chiropractic treatments."

(5) Dr. Rosin recommended that Mishock receive continued chiropractic care, physical therapy, and trigger point injections.

(6) On April 4, 1998, Henrik Mike-Mayer M.D. stated that Mishock was "overly concerned with litigation medical legal issues versus her pain."

(7) Dr. Mike-Mayer recommended cervical steroid epidural injections which Mishock refused.

(8) On October 14, 1999, Jacquelyn A. Bonomo, Mishock's massage therapist, indicated that when she spoke to Mishock about the continued need for a weekly massage Mishock became defensive.

(9) Bonomo indicated that Mishock became "defensive after I suggested muscle tension in her back had changed and was showing a definite improvement."

(10) In or around October/November 2000, Erie instituted peer review proceedings pursuant to the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL).

(11) Christopher J. Boylan D.C. and Jane L. McBride D.C. performed the peer review services relative to the chiropractic treatments being received by Mishock.

(12) The results of the peer review conducted by Drs. Boylan and McBride were that the chiropractic services

being received by Mishock were not reasonable and necessary.

(13) Milton Klein D.O. and Robert T. O'Leary D.O. performed the peer review services relative to the massage therapy treatment being received by Mishock.

(14) The results of the peer review conducted by Drs. Klein and O'Leary were that the massage therapy treatments being received by Mishock were not reasonable and necessary.

(15) Upon receiving the initial findings of the peer reviewers, Mishock requested reconsideration pursuant to the provisions of the MVFRL.

(16) The court finds that Mishock has established that her initial complaints of pain were causally related to the underlying motor vehicle accident of January 1997.

(17) Drs. Corneal and Rosin testified that Mishock's symptomology was causally related to the motor vehicle accident of January 1997.

(18) Drs. Boylan and McBride, the peer review examiners, stated that they made no determinations as to the underlying causation of any injuries and opined only about the reasonableness and necessity of continued care.

(19) The court finds credible the testimony of Dr. Boylan who stated, referring to chiropractic treatments, that "it was [his] opinion that treatment beyond June 13, 2000, was not considered reasonable and necessary."

(20) The court finds credible Dr. Boylan's determination that there "was a plateau or decrease in favorable responses from an objective standpoint," making care no longer clinically necessary.

(21) The court finds credible the testimony of Dr. McBride that Mishock has achieved "maximum medical improvement," however, the court determines that the date of the "plateau" or "maximum medical improvement" is more properly June 13, 2000, as stated by Dr. Boylan.

## DISCUSSION

Erie argues that it did not breach its contract in terminating insurance benefits provided to Mishock because the injuries for which Mishock sought treatment were not "causally related to the underlying motor vehicle accident" and that her treatments were not "reasonable and necessary under the circumstances." Erie asserts these contentions pursuant to the clause in the policy which states that "We [Erie] will pay reasonable and necessary charges for . . . medical expenses . . . ." The court will address the issues of "causal connection" and "reasonableness and necessity" of the expenses separately.

First, the court determines that Mishock has proven that the initial symptoms that she experienced were causally related to the January 1997 accident. Mishock presented the testimony of Drs. Rosin and Corneal who stated that it was their belief that the symptoms complained of were a result of the accident that occurred in January 1997. (Rosin dep., p. 9/Corneal dep., pp. 15, 16.) Erie failed to present any medical testimony regarding the causal relation of Mishock's symptoms to the accident in January 1997. Drs. Boylan and McBride rendered no opinions relative to the causation of Mishock's pain. (Boylan dep., p. 21/McBride dep., p. 21.)

Erie continued to pay Mishock's medical expenses as if they directly resulted from the January 1997 accident until it requested a peer review in October or November 2000. Erie then failed to present any medical testimony to rebut or contradict Mishock's and her doctors' testimony that the symptoms she was experiencing directly resulted from the January 1997 accident.

Next, the court determines that Mishock's continued need for chiropractic treatments and massage therapy treatments were not reasonable and necessary after the date of June 13, 2000. In reaching this conclusion the court relies on the credible testimony of the doctors presented by Erie. Dr. Boylan stated that based upon the documentation he reviewed "there was little objective evidence to further substantiate clinical intervention." (Boylan dep., p. 15.) Dr. Boylan further stated that there was a "plateau or decrease of favorable response from an objective standpoint," making care no longer clinically necessary. (Boylan dep., p. 15.) Similarly, Dr. McBride stated that Mishock's "progress plateaued," however Dr. McBride believed this occurred only nine months after the accident. (McBride dep., p. 13.) Dr. McBride opined that Mishock had reached maximum medical improvement. (McBride dep., p. 14.)

The court must also point out that it also relied on statements and reports from Mishock's own doctors and therapists in making its determination that treatments were no longer reasonable and necessary. As far back as a few months after the accident in 1997, Dr. Corneal referred Mishock to another doctor because "she wasn't showing the type of improvement we would expect," in

reference to the chiropractic treatments. (Corneal dep., p. 18.) Dr. Corneal told Dr. McBride that Mishock "had not improved any further under his care" and that is why he sent Mishock to Dr. Rosin. (McBride dep., p. 13.) Furthermore, on October 14, 1999, Mishock's own massage therapist told Mishock the "muscle tension in her back had changed and she was showing definite improvement." (Def. ex. "13.") Mishock responded defensively to this statement and once again talked of litigation. These statements by Dr. Corneal and Jacquelyn Bonomo corroborate the peer reviewers' determinations that Mishock's progression had "plateaued" and that she had reached "maximum medical improvement."

For these reasons the court determines that Erie did not breach its contract with Mishock by terminating her insurance benefits and proceeded in accordance with regulations as far as the peer review process was concerned. The court is unaware of the date of last payment but determines that Erie is responsible for paying Mishock's treatment bills up to the date of June 13, 2000, the date Dr. Boylan determined treatment was no longer necessary. The court further determines that Mishock is liable to Erie for the costs of the reconsideration of the peer review pursuant to the MVFRL.

## ORDER

And now, May 28, 2003, after a civil non-jury trial, the court finds in favor of defendant Erie Insurance Exchange. Defendant Erie Insurance Exchange did not breach its contract with plaintiff Mylinda Mishock and is only responsible for treatment bills up to the date of June 13, 2000.

It is further ordered that the court finds in favor of defendant Erie Insurance Exchange on its counterclaim against plaintiff Mylinda Mishock. Plaintiff Mylinda Mishock shall pay defendant Erie Insurance Exchange the sum of U.S. $890, representing the costs associated with the reconsideration of the peer review process.