Beverly LEVINE, Appellee

v.

**TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,**
Appellant.

Superior Court of Pennsylvania.

Argued Jan. 15, 2013.
Filed May 24, 2013.

Ernest F. Koschineg, III, Philadelphia, for appellant.

Michael E. Kosik, Harrisburg, for appellee.

BEFORE: BOWES, GANTMAN, and OLSON, JJ.

OPINION BY BOWES, J.:

Travelers Property Casualty Insurance Company ("Travelers") appeals from the judgment entered in favor of Beverly Levine in this breach of contract action instituted against the insurer for its refusal to pay her medical bills following a rear-end collision. The trial court found the charges to be reasonable and necessary and awarded attorneys' fees pursuant to the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1797(b). After careful review, we affirm.

The pertinent facts are as follows. Beverly Levine sustained injuries to her back and shoulder in a rear-end automobile col-

lision on February 5, 2003. She sought medical treatment and underwent physical therapy prescribed by her physician from February 23, 2003 through March 21, 2003. The bills were submitted to her automobile insurance carrier, Travelers, under the first-party medical coverage,[1] and Travelers paid the providers.

On June 17, 2003, Ms. Levine was evaluated by Dr. Steven Wolf, an orthopedic surgeon, and he prescribed McKenzie format physical therapy, a different type of rehabilitative treatment.[2] Ms. Levine attended physical therapy sessions from June 23, 2003 through June 30, 2003, and continued to perform the exercises at home. Upon receipt of the bills for Dr. Wolf's evaluation and McKenzie physical therapy, Travelers submitted her file for review by one of its nurses, who recommended referral of the claims to peer review.

Travelers submitted the claims to Perspective Consulting, a peer review organization ("PRO"), and received a response on September 29, 2003. The PRO concluded that Dr. Wolf's initial evaluation was reasonable and necessary, but that the physical therapy he ordered was not, since Ms. Levine had responded well from the earlier physical therapy. Based on that review, Travelers denied payment for the McKenzie physical therapy.

In November 2004, upon receipt of a bill for EMG and nerve conduction studies ordered by Dr. Wolf, Travelers corresponded with the physician requesting his rationale in ordering the testing. Prior to receiving Dr. Wolf's response, Travelers sought an independent medical examination ("IME") to determine if Ms. Levine's carpal tunnel symptoms were causally related to the motor vehicle accident. In January 2005, Ms. Levine underwent a physical examination performed by Dr. Bruce Goodman, an orthopedic surgeon, who subsequently reported to Travelers that Ms. Levine's carpal tunnel was unrelated to the accident and that she had achieved maximum medical improvement ("MMI") from her accident-related injuries as of the date of the examination.[3] Based on that IME and the earlier peer review results, Travelers denied payment for treatments related to carpal tunnel symptoms.

On February 6, 2007, Beverly Levine commenced the first of two lawsuits against Travelers, "Levine I" at Docket No.: 2007–cv–1125. That case settled on March 12, 2008, with payment of all of Ms. Levine's medical and rehabilitation bills through February 13, 2008, together with attorneys' fees and costs of suit. The release executed by the parties in that lawsuit provided that Ms. Levine was not prevented from seeking further medical treatment, submitting the bills to Travel-

1. Ms. Levine possessed $100,000 of first-party medical coverage pursuant to the Travelers policy.

2. Dr. Wolf distinguished the therapy he prescribed from the stabilization-type therapies Ms. Levine previously had received. "McKenzie therapy is a different type of therapy based on a patient's response to movement in the cervical spine ... more of a postural-type therapy." Plaintiff's Exhibit 7A, at 13.

3. Based upon the EMG and nerve conduction studies, Dr. Wolf also concluded that the symptoms of carpal tunnel disease were unrelated to cervical radiculopathy and the accident. Deposition, Steven B. Wolf, M.D., 1/13/11, at 16–17 (Plaintiff's Exhibit 7(a)). However, he opined to a reasonable degree of medical certainty that all treatment for Ms. Levine's cervical spine was directly related to the 2003 auto accident and the charges were reasonable and necessary. *Id.* at 26, 28. Physical therapy and home exercises alleviated Ms. Levine's pain and kept her functional. Deposition, Steven B. Wolf, 3/24/11, at 71–72 (Plaintiff's Exhibit 7(b)).

ers for payment, and bringing suit against Travelers for additional medical expenses. Plaintiff's Exhibit 3. Travelers retained the right to request additional IMEs and conduct future peer review investigations. *Id.*

Commencing November 11, 2008, Ms. Levine underwent additional medical treatment and rehabilitative services, which the providers tendered to Travelers for payment. Without explanation, Travelers refused to pay the charges. At trial, the insurer maintained that its denial was based on the January 2005 IME. On February 6, 2009, Ms. Levine commenced this second breach of contract action against Travelers to recover the outstanding medical expenses incurred after November 11, 2008, together with attorneys' fees and costs. Following a non-jury trial, the court concluded that Ms. Levine pled a violation of the Motor Vehicle Financial Responsibility Law ("MVFRL"), that the charges were reasonable and necessary, and that Travelers breached its contract with its insured by refusing to pay. Trial Court Opinion, 6/12/12, at unnumbered 2–3. The court ordered Travelers to pay the outstanding medical expenses, together with interest and costs. Relying upon 75 Pa.C.S. § 1797(b) and our decision in *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 29 A.3d 19 (Pa.Super.2011), *rev'd* —— Pa. ——, 64 A.3d 1058 (2013), the trial court also awarded reasonable attorneys' fees of $27,930, holding such fees recoverable under that statutory provision "if the court determines treatment was medically necessary[.]" Trial Court Opinion, 6/12/12, at unnumbered 7.

Travelers filed a post-trial motion, and the trial court scheduled an evidentiary hearing on the reasonableness of the attorneys' fees award. The hearing was cancelled, however, when the parties elected to submit the matter on briefs. Travelers

now appeals to this Court challenging the propriety of the award of attorneys' fees in two respects:

> Was the Court's determination in the June 12, 2012 order granting an award of attorney's fees in a breach of contract claim where attorney's fees were neither 1) authorized by statute, 2) authorized by contract or agreement among the parties, nor 3) authorized by some other recognized exception, an error of law and/or abuse of discretion?

> Whether an error of law was committed where the Court of Common Pleas interpreted the case law and statutory framework of Act 6, including 75 Pa.C.S. § 1797 and the regulations pertaining to Act 6 (including 31 Pa.Code § 69.51 et seq.), to allow the imposition of attorney's fees even when appellant had previously used the peer review process?

Appellant's brief at 4.[4]

Travelers does not dispute the trial court's finding that the medical bills were necessary and reasonable and that the insurer breached its contract with its insured. Rather, it challenges the trial court's award of attorneys' fees. The insurer contends first that the trial court erred in awarding such fees since Ms. Levine did not plead a violation of the MVFRL, and they were not authorized by the insurance policy or any other recognized exception. The trial court disagreed, holding that Ms. Levine pled in her complaint and argued throughout the case that Travelers violated the MVFRL. Trial Court Opinion, 6/12/12, at unnumbered 7.

We agree with the trial court. Ms. Levine pled that the Travelers policy "provided for the payment of first-party medical benefits, in accordance with the provision of the Pennsylvania Motor Vehicle Finan-

---

4. We have reordered Travelers' issues for ease of disposition.

cial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.*" Complaint, ¶ 4. She pled further that due to Travelers' denial of coverage for medical bills and physical therapy, she engaged counsel to recover those bills as provided under the MVFRL. *Id.* at ¶ 15. Thus, Travelers' contention that Ms. Levine failed to plead a statutory basis under the MVFRL for the award of attorneys' fees is without merit.

■ Next, Travelers avers that attorneys' fees are not recoverable pursuant to 75 Pa.C.S. § 1797(b), which we set forth and analyze *infra*, as it used the peer review process, specifically the peer review determination of September 18, 2003 and the January 7, 2005 IME, to deny payment of medical bills. Appellant's brief at 11. Travelers argues that attorneys' fees are not recoverable under section 1797(b) where the charges are submitted to a peer review organization for a determination as to whether they were reasonable and necessary.

In *Herd,* this Court interpreted that statutory provision as authorizing attorney fee awards whenever a court determines that medical treatment was reasonable and necessary, regardless of whether the insurer submitted the charges to peer review. Following the submission of briefs and oral argument in this appeal, our Supreme Court reversed this Court's decision and held that 75 Pa.C.S. § 1797(b)(4) authorizes the award of attorneys' fees only in the event that an insurer has not invoked the peer review process. In light of our High Court's pronouncement in *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto Ins. Co.,* —— Pa. ——, 64 A.3d 1058 (2013), Ms. Levine is not entitled to recover attorneys' fees pursuant to sections 1797(b)(4) and (6) if the charges and treatment at issue were submitted to a PRO for a determination of whether they were reasonable and necessary. Thus, the issue presented herein is whether Travelers availed itself of the peer review process within the meaning of 75 Pa.C.S. § 1797(b)(4) and (b)(6) so as to preclude liability for attorneys' fees. We conclude that Travelers did not challenge before a PRO the reasonableness and necessity of the treatment and bills at issue, and thus, we affirm the trial court's award of attorneys' fees.

The trial court did not make a specific finding as to whether Travelers employed the peer review process as it was not necessary to its disposition under then-prevailing authority. However, the parties astutely anticipated the possibility of a Supreme Court reversal in *Herd,* and thoroughly briefed and argued this issue, permitting us to address it without remand. Since this issue implicates a question of statutory interpretation, our standard of review is *de novo,* and our scope of review is plenary. *Stoloff v. Neiman Marcus Group, Inc.,* 24 A.3d 366, 369 (Pa.Super.2011).

Ms. Levine contends that Travelers did not submit the 2008–2010 bills to peer review. Furthermore, contrary to Travelers' representation herein, she alleges that the denial of those charges was not based on the 2003 peer review. She directs our attention to the testimony of the Travelers adjuster, Susan Adamitis, who stated that the denial was based solely on the IME performed by Dr. Bruce Goodman in 2005, N.T. Non–Jury Trial, 4/26/11, at 102, 104, 108. Ms. Levine argues that an IME is not peer review within the meaning of the statute.

Travelers counters that "there is simply nothing in the statutory framework of 1797(b)" that distinguishes an IME from peer review. Appellant's Reply Brief at 6. It continues that § 1797 only requires that an insurer use a PRO to challenge whether medical treatment is reasonable and neces-

sary. *Id.* at 4. Travelers alleges that it requested Rehabilitation Planning, Inc., an approved PRO, to order an IME, and that Dr. Goodman was selected to complete the IME. Furthermore, Travelers contends that peer review is not defined in the Pennsylvania MVFRL, and that the common usage of the term, "reconsideration of one's work that is of equal standing[,]" controls. *Id.* Dr. Goodman, Travelers reasons, is an orthopedic surgeon just like Dr. Wolf, and in reexamining and reconsidering Dr. Wolf's treatment, he conducted peer review. He opined that Ms. Levine had reached maximum medical improvement and that any further deterioration in her condition was caused by the degenerative nature of her disease, not the accident. Travelers maintains that achieving maximum medical improvement is just another way of stating that treatment was not medically necessary, the hallmark of a PRO outcome.

There is no dispute that Travelers previously invoked the peer review process in 2003 to determine whether certain charges were reasonable and necessary. The issue presented herein is whether that peer review or the subsequent IME constituted a challenge to the reasonableness and necessity of the medical treatment at issue within the meaning of section 1797(b) and *Herd,* so as to preclude the award of attorneys' fees. We turn first to the statute, mindful that "[t]he purpose of the interpretation and construction of statutes is to ascertain and effectuate the legislature's intent. . . . When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *St. Elizabeth's Child Care Ctr. v. Department of Public Welfare,* 600 Pa. 131, 963 A.2d 1274, 1276 (2009).

Section 1797 of the MVFRL, entitled "Customary charges for treatment," was enacted in 1990 to establish a specific procedure for evaluating the reasonableness of charges for medical care.[5] Section 1797(a) of the statute defines how a reasonable charge should be calculated with reference to prevailing rates and fee schedules. Section 1797(b) is devoted to peer review plans for challenging the reasonableness and necessity of treatment. Subsection (b)(1) mandates that insurers contract with peer review organizations to evaluate treatment and health care services to confirm that "such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." 75 Pa.C.S. § 1797(b)(1). It further provides that an insurer seeking to initiate a peer review challenge with the PRO must do so "within 90 days of the insurer's receipt of the provider's bill for treatment or services" or "at any time for continuing treatment or services." *Id.* If the insurer denies payment, with or without submitting the charges for peer review, recourse for the insured or the provider is to the courts. Title 75 Pa.C.S. § 1797(b)(4) provides:

---

**5.** Federal courts applying Pennsylvania principles of statutory construction in interpreting the MVFRL have held that because § 1797 was enacted after § 1716, "Payment of benefits," and established a specific procedure for challenging the reasonableness of claims, rather than the general provisions of § 1716, section 1797 is the exclusive procedure for challenging the reasonableness and necessity of bills. *See Jack A. Danton, D.O., P.C. v. State Farm Mut. Auto. Ins. Co.,* 769 F.Supp. 174, 177 (E.D.Pa.1991). Section 1716 provides that benefits are overdue if not paid within thirty days after the insurer receives proof of the amounts, and "[i]n the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended." 75 Pa.C.S. § 1716. Neither party argued below that § 1716 applied herein.

(4) Appeal to court.—A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

75 Pa.C.S. § 1797(b)(4). If the insurer did not challenge the reasonableness and necessity of the charges before a PRO, and the court rules in favor of the provider or insured in a subsection (4) proceeding, *i.e.*, determines that the medical treatment was medically necessary, the insurer is liable for the outstanding bills, together with interest at twelve percent, and costs and attorneys' fees incurred in the court challenge pursuant to § 1797(b)(6). That subsection provides:

(6) Court determination in favor of provider or insured.—If, pursuant to paragraph (4), a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees.

75 Pa.C.S. § 1797(b)(6).

The following definitions inform our review. Treatment, accommodations, products or services,[6] which are determined to be necessary by a licensed health care provider, are "[n]ecessary medical treatment and rehabilitative services" "unless they shall have been found or determined to be unnecessary by a State-approved Peer Review Organization (PRO)." 75 Pa. C.S. § 1702. Thus, duly prescribed medical care is presumptively reasonable and necessary unless peer review results in a contrary determination.

A PRO is defined in the MVFRL, 75 Pa.C.S. § 1702[7] as:

Any Peer Review Organization with which the Federal Health Care Financing Administration or the Commonwealth contracts for medical review of Medicare or medical assistance services, or any health care review company, approved by the commissioner, that engages in peer review for the purpose of determining that medical and rehabilitation services are medically necessary and economically provided. The membership of any PRO utilized in connection with this chapter shall include representation from the profession whose services are subject to the review.

In November 2008, Ms. Levine was reevaluated by Dr. Wolf, and the surgeon recommended a short refresher course of McKenzie physical therapy at Pinnacle Health Physical Therapy. Shortly thereafter, Dr. Wolf ordered imaging studies.

---

**6.** Subject to section 1797's limitations relating to customary charges for treatment, first party medical coverage includes payment for "reasonable and necessary medical treatment and rehabilitative services, including, licensed physical therapy[.]" 75 Pa.C.S. § 1712.

**7.** A peer review organization PRO is also defined in the regulations:

Peer Review Organization—A professional organization with which HCFA or the Commonwealth contracts for medical review of Medicare or Medical Assistance services, or a health care entity approved by the Commissioner, that engages in reviewing medical files for the purpose of determining that medical and rehabilitation services are medically necessary and economically provided.

31 Pa.Code § 69.3.

Travelers refused to pay related charges totaling approximately $1300. It did not submit these new charges to a PRO within ninety days of receipt of the bills before denying payment. Travelers did not ask Dr. Goodman to review the notes of Ms. Levine's treatment received in November and December 2008, or to update his report or provide any additional opinion. N.T. Non–Jury Trial, 4/26/11, at 108. There is no dispute that Travelers did not avail itself of the peer review process within ninety days of receipt of the bills at issue in the present lawsuit to determine whether they were reasonable or necessary prior to denial. Thus, it would appear that attorneys' fees are recoverable. However, our inquiry does not end here.

Travelers contends that it based its denial of the 2008 charges on both the 2003 peer review determination that "the treatment at issue was not reasonable and necessary and upon a[n] independent medical examination on January 7, 2005 that determined that [Ms. Levine] had reached maximum medical improvement." Appellant's brief at 7. This, according to Travelers, was reasonable justification not to pay the bills.

The record belies Travelers' claim that it denied payment of the 2008–2009 bill based on the 2003 peer review. The adjuster who handled the claim on behalf of Travelers, Susan Adamitis, testified that the denial was based solely on the 2005 IME. N.T. Non–Jury Trial, 4/26/11, at 102. Thus, we turn to Travelers' fallback argument that the MVFRL makes no distinction between peer review and an IME, that the latter is peer review within the meaning of § 1797, and that a denial based on an IME does not subject it to attorneys' fees.

An IME is a physical or mental examination. *See* 75 Pa.C.S. § 1796.[8] Such examinations may be performed where the subject voluntarily submits, where an insurance policy so provides, or pursuant to a court order. Travelers' Susan Adamitis testified at trial that an IME is a medical examination conducted by a physician for purposes of determining if treatment is causally related to the accident and/or whether the insured has reached maximum medical improvement. N.T. Non–Jury Trial, 4/26/11, at 110, 113.[9]

---

8. Such examinations are contemplated by § 1796, which provides:
Mental or physical examination of person. (a) General rule.—Whenever the mental or physical condition of a person is material to any claim for medical, income loss or catastrophic loss benefits, a court of competent jurisdiction or the administrator of the Catastrophic Loss Trust Fund for catastrophic loss claims may order the person to submit to a mental or physical examination by a physician. The order may only be made upon motion for good cause shown. The order shall give the person to be examined adequate notice of the time and date of the examination and shall state the manner, conditions and scope of the examination and the physician by whom it is to be performed. If a person fails to comply with an order to be examined, the court or the administrator may order that the person be denied benefits until compliance.

(b) Report of examination.—If requested by the person examined, a party causing an examination to be made shall promptly deliver to the person examined a copy of every written report concerning the examination at least one of which must set forth the physician's findings and conclusions in detail. Upon failure to promptly provide copies of these reports, the court or the administrator shall prohibit the testimony of the examining physician in any proceeding to recover benefits.
75 Pa.C.S. § 1796.

9. Nurse Case Manager Betty Jane Kraczon stated that an IME is performed for purposes of causality, and the justification herein was the diagnosis of carpal tunnel, not medical management. Deposition, Betty Jane Kraczon, 8/16/10, at 42–43 (Plaintiff's Exhibit 8).

In the instant case, the IME was sought by Travelers in January 2005 to determine whether Ms. Levine's symptoms of carpal tunnel were causally related to the accident.

Peer review is a records review undertaken to evaluate whether specific charges for care submitted to the insurer for medical or rehabilitative care are reasonable and necessary. *See* 31 Pa.Code § 69.52.[10] The regulations provide that, "[a] PRO has the authority to evaluate the reasonableness and medical necessity of care, and the professional standards of performance including the appropriateness of the setting where the care is rendered, and the appropriateness of the delivery of the care rendered." 31 Pa.Code § 69.51. The process is a mechanism through which an insurer may seek a professional assessment of the reasonableness and necessity of medical treatment in order to independently determine whether a claim should be paid or denied. *Terminato v. Pennsylvania Nat'l Ins. Co.*, 538 Pa. 60, 645 A.2d 1287, 1291 (1994).

The IME took place almost four years before the charges at issue were submitted for payment. Hence, that examination could not and did not include a review of the reasonableness and necessity of the 2008 treatment and bills. Travelers cites *Mishock v. Erie Insurance Exchange*, 64 Pa. D. & C.4th 111 (Centre Co.2003) as persuasive authority for the proposition that an IME finding of maximum medical improvement is a substitute for a peer review determination that charges are unnecessary and unreasonable. *Mishock* says no such thing. In *Mishock*, Erie submitted the claim for chiropractic treat-

ment to a PRO within ninety days for a reasonableness determination. The trial court found credible the reviewer's opinion that the chiropractic treatment beyond a certain date was not reasonable and necessary as any benefit had plateaued. There was no IME.

We find that an IME is not peer review as defined in § 1797 of the MVFRL. The purpose of peer review is to determine whether medical care and bills are reasonable and necessary based upon a records review. An IME subjects a person to a physical or mental examination, the purpose of which is to determine whether the injuries are causally related to the accident. The fact that the IME physician may have been procured by an entity that is an approved PRO, or that he reviews medical records, does not convert an IME into peer review. It is an entirely different process pursued for a different purpose.

Finally, Travelers argues that merely by invoking the peer review process in 2003, it is insulated from liability for attorneys' fees based on § 1797. We find no support for this proposition in the statutory language or in the authorities relied upon by Travelers. Section 1797(b)(4) refers to "an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO." We interpret "the reasonableness ... of which" as referring to the "past or future medical treatment or rehabilitative services or merchandise" for which the insurer has refused to pay.[11]

**10.** Nurse Case Manager Betty Kraczon testified via deposition that peer review is done "for treatment by a specific provider and for the medical necessity or the reasonableness or the appropriateness of such a treatment[.]"

Deposition, Betty Jane Kraczon, 1/16/10, at 19 (Plaintiff's Exhibit 8).

**11.** A portion of the bills at issue represented charges for McKenzie format physical therapy, the same service that was submitted to

Travelers did not submit the later treatment and charges to the scrutiny of the § 1797(b) PRO process for a determination of their necessity and reasonableness. In short, the charges and treatment at issue were not peer reviewed. Hence, the trial court did not err or abuse its discretion in awarding attorneys' fees pursuant to 75 Pa.C.S. § 1797(b)(4) and (6) and our Supreme Court's recent decision in *Herd, supra.*

Judgment affirmed.

peer review in 2003. We recognize that "[a]bsent a change of condition, a decision of not medically necessary by the PRO" can be the basis for denying payment for similar services. *See* 31 Pa.Code § 69.52(g). However, Travelers did not rely upon the earlier peer review in denying payment herein, nor did it contend that there had been no change in Ms. Levine's condition between 2003 and 2008.