DOCTOR'S CHOICE PHYSICAL MEDICINE & REHABILITATION CENTER, P.C., (LaSelva), Appellant

v.

TRAVELERS PERSONAL INSURANCE COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued April 2, 2014.
Filed May 2, 2014.
Reargument Denied June 25, 2014.

814

Robert F. Claraval, Harrisburg, for appellant.

Ernest F. Koschineg, III, Blue Bell, for appellee.

BEFORE: DONOHUE, J., ALLEN, J., and MUNDY, J.

OPINION BY MUNDY, J.:

Appellant, Doctor's Choice Physical Medicine & Rehabilitation Center, P.C. (Doctor's Choice), appeals from the August 7, 2013 judgment entered in its favor and against Appellee, Travelers Personal Insurance Company (Travelers), in the amount of $27,770.50 plus interest of 12 percent. Doctor's Choice challenges the trial court's failure to award statutory attorney fees. After careful review, we reverse the trial court's June 21, 2013 partial grant of Travelers' post-trial motions, vacate judgment, and remand for further proceedings consistent with this opinion.

The pertinent factual and procedural history of this case follows. On September 8, 2004, Angela LaSelva sustained personal injuries in a motor vehicle accident. At the time of the accident, Travelers insured LaSelva under an automobile insurance policy, which included first party medical benefits of $100,000.00. LaSelva received treatment for the injuries she incurred in the accident from various health care providers. Commencing on·or around April 13, 2005, LaSelva treated with Dr. David Novatnak, a chiropractor with Doctor's Choice. Dr. Novatnak provided chiropractic treatment designed to alleviate LaSelva's ongoing pain.

In accordance with 75 Pa.C.S.A. § 1797(a), Doctor's Choice billed Travelers directly for the medical services it provided to LaSelva. Travelers submitted the bills from Doctor's Choice to IMX Medical Management Services (IMX) for peer review.[1] IMX designated Dr. Mark Cavallo, a chiropractor, to conduct the peer review.

On July 7, 2005, Dr. Cavallo submitted a report, citing his review of LaSelva's medical records, and self-selected medical literature.[2] In the report, Dr. Cavallo concluded that certain treatments provided by Dr. Novatnak, including "all surface EMG, range of motion, and/or muscle testing," as well as "passive therapy such as electrical stimulation, diathermy [and] massage," were unnecessary. N.T., 6/26/12, at 41, 99, Plaintiff's Exhibit # 13 (Dr. Cavallo's Re-

1. IMX is one of the peer review organizations with which Travelers contracts in compliance with 75 Pa.C.S.A. § 1797(b)(1) and 31 Pa. Code § 69.53(a).

2. For the purpose of the peer review, the parties agree no national or regional norms had been developed or recognized for the treatments provided by Dr. Novatnak to LaSelva. Notwithstanding the absence of na-

tional or regional norms, IMX did not establish written criteria based on typical patterns of practice in the geographical area for application in its peer reviews of such treatments. As discussed further, *infra*, these deficiencies formed the basis for the trial court's determination that the report was not a valid peer review. *See* 31 Pa.Code § 69.53(e).

port at 4). Dr. Cavallo also concluded that, as of June 9, 2005, LaSelva "had achieved the point of maximum benefit" from the remaining types. of treatments provided for LaSelva's care by Dr. Novatnak.[3] *Id.* at 5. Travelers subsequently refused payment of the bills for the treatments deemed unnecessary by Dr. Cavallo, including all treatment performed after June 9, 2005.

On November 20, 2008, Doctor's Choice filed a complaint against Travelers, averring Travelers improperly denied payment in violation of the Motor Vehicle Financial Responsibility Law (MVFRL)[4], specifically Sections 1716 and 1797. Doctor's Choice alleged in its complaint that the review conducted by Dr. Cavallo through IMX did not comport with the regulatory requirements for a peer review and therefore no peer review was performed. Complaint, 11/20/08, at 7–8, ¶¶ 17, 20–23. Doctor's Choice additionally averred the charges rejected by Travelers were for treatment of LaSelva that was reasonable and necessary. *Id.* at 6, ¶¶ 29–32. On June 26, 2012, the matter proceeded to a bench trial at which Dr. Novatnak and Dr. Cavallo testified.[5]

On December 13, 2012, the trial court issued an order, entering judgment in favor of Doctor's Choice in the amount of $82,287.06, "representing the unpaid medical expenses, plus statutory interest at 12% per annum, attorney's fees, and costs of suit." Trial Court Order, 12/13/12, at 1. In an opinion accompanying its order, the trial court specifically found that the report prepared by Dr. Cavallo was "invalid" as a peer review and that the disputed treatments provided by Dr. Novatnak were "reasonable and necessary." Trial Court Opinion, 12/13/12, at 5, 8.

On December 24, 2012, Travelers filed a post-trial motion for reconsideration, alleging, *inter alia*, that the trial court abused its discretion in awarding attorney fees. On June 21, 2013, the trial court entered an order denying in part and granting in part Travelers' post-trial motion. Specifically, relying on our Supreme Court's recent decision in *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 619 Pa. 438, 64 A.3d 1058 (2013), the trial court modified the verdict to $27,770.50, removing the attorney fee portion from its original verdict.

On July 1, 2013, Doctor's Choice filed a post-trial motion requesting the reinstatement of the attorney fee award, arguing the holding in *Herd* does not directly address the issue in the instant case. On

---

**3.** In this regard, Dr. Cavallo's report, without reference to regional or national norms, or written criteria, specifically concluded as follows:

> Therefore, based upon the above literature as well as review of the records and circumstances concerning this case, it is my clinical opinion that the claimant had achieved the point of maximum benefit from further in-office chiropractic care as provided by Dr. Novatnak by June 9, 2005. In my clinical opinion, a sufficient amount of in-office conservative chiropractic care had been provided to the claimant through the above date specifically for the treatment of the injuries in which Ms. LaSelva experienced in September of 2004.

*Id.* at 5.

**4.** 75 Pa.C.S.A. 1701–1799.7.

**5.** On June 11, 2012, the trial court entered an order, deeming admitted requests from Doctor's Choice for several admissions pursuant to Pa.R.C.P. 4014, effectively confining the issues at trial to whether a valid peer review had been performed and whether the treatment provided to LaSelva by Dr. Novatnak was reasonable and necessary. *See* Trial Court Order, 6/11/12, at 1; [Doctor's Choice's] Motion to Deem Requests for Admission Addressed to [Travelers] Admitted, 6/8/12, at 1–2, Exhibit A; N.T., 6/26/12, at 4–7.

August 1, 2013, the trial court denied Doctor's Choice's post-trial motion. Pursuant to a praecipe filed by Doctor's Choice, judgment was entered on August 7, 2013. Thereafter, Doctor's Choice filed a timely notice of appeal on August 28, 2013.[6]

On appeal, Doctor's Choice raises the following issues for our review.

1. Where an auto insurance carrier uses a records review, which is in fact an invalid peer review, to wrongfully deny payment of a health care provider's medical bills and the Court determines the care and bills were medically reasonable and necessary, does 75 Pa.C.S. § 1797(b)(4) & (6) and *Levine v. Travelers* [*Prop. Cas. Ins. Co.*, 69 A.3d 671 (Pa.Super.2013) ] require an award of attorney fees to the provider?

2. Where an auto insurance carrier wrongfully sends a health care provider's bill to peer review, is the carrier responsible for attorney fees if the care is judicially determined to be reasonable and necessary?

3. Did the [t]rial [c]ourt commit an error of law when the [trial c]ourt failed to award attorney fees under 75 Pa.C.S. § 1716 or 75 Pa.C.S. § 1798 where the auto carrier violated the peer review procedure at § 1797, 31 Pa.Code § 69.52(a) and § 69.53(e)?

Doctor's Choice's Brief at 3–4 (footnotes omitted).[7]

The first issue raised by Doctor's Choice questions whether the trial court erred in declining to award attorney fees pursuant to 75 Pa.C.S.A. § 1797(b)(4) as part of its verdict against Travelers in favor of Doctor's Choice. The trial court's factual findings are not in dispute.[8] Accordingly, we are presented solely with an issue of statutory interpretation relative to the award of attorney fees.

Statutory interpretation presents a question of law subject to plenary review. The goal and purpose of statutory interpretation is to ascertain legislative intent and give it effect. 1 Pa.C.S.A. § 1921(a). In discerning that intent, our inquiry begins with the language of the statute itself. If the language of the statute unambiguously sets forth the legislative intent, this Court will apply that intent to the case at bar and not look beyond the statutory language to ascertain its meaning. 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). We will resort to the rules of statutory construction only when there is an ambiguity in the statutory language at issue.

*Matharu v. Muir*, 86 A.3d 250, 262 (Pa.Super.2014) (en banc) (some citations omitted).

---

**6.** The trial court did not require Doctor's Choice to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). The trial court filed a statement in lieu of a Rule 1925(a) opinion, referencing its June 21, 2013, and August 1, 2013 orders as expressing the reasons for its rulings.

**7.** The Pennsylvania Association for Justice has filed an *amicus curiae* brief in support of Doctor's Choice's appeal in connection with issue number one.

**8.** Travelers has not challenged the trial court's determination that the charges and treatment for which Travelers refused payment were necessary and reasonable, nor has it challenged the trial court's determination that the report issued by Dr. Cavallo on behalf of IMX was not a valid peer review. The basis for those findings is further discussed *infra* for context.

Further, the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa. C.S.A. § 1922(1). In interpreting statutes, a court should not assign a contrived meaning to clear language, nor should it construe the statute or provision in question so as to promote or further absurd results.

*In Re B.A.M.*, 806 A.2d 893, 894 (Pa.Super.2002) (internal quotation marks and citation omitted).

■ Central to Doctor's Choice's first issue is whether Travelers' refusal to pay was based on a peer review. A complaint by a provider against an insurer for nonpayment of submitted charges is cognizable pursuant to either Section 1797(b)(4) of the MVFRL or 31 Pa.Code § 69.52(m). Section 1797(b)(4), authorizing suit against an insurer for refusals to pay that are not challenged before a PRO, provides as follows.

> (4) **Appeal to court.**—A provider of medical treatment or rehabilitative services or merchandise ... may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which **the insurer has not challenged before a PRO.** Conduct considered to be wanton shall be subject to a payment of treble damages.

75 Pa.C.S.A. § 1797(b)(4) (emphasis added).

Contrastingly, the MVFRL does not afford a provider recourse to a court to challenge an insurer's refusal to pay that is based on a challenge before a PRO. The Insurance Department regulations, however, provide for such an appeal. *See* 31

Pa.Code § 69.52(m) (providing, "upon determination of a reconsideration by a PRO, an insurer, provider or insured may appeal the determination to the courts"); *see also Terminato v. Pa. Nat'l Ins. Co.*, 538 Pa. 60, 645 A.2d 1287, 1288 (1994) (holding "an insured is not required to request reconsideration of a peer review decision before proceeding to court").[9]

Further, only an insurer's refusal to pay that is not based on a peer review determination under Section 1797(b) implicates the attorney fee award at issue in this appeal.

> (6) **Court determination in favor of provider or insured.**—If, pursuant to paragraph (4), a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees.

75 Pa.C.S.A. § 1797(b)(6).

Instantly, as noted, Doctor's Choice alleged in its complaint that no valid peer review was performed, averring therefore that Travelers' refusal was not based on a challenge before a PRO, and Sections 1797(b)(4) and (6) apply. Complaint, 11/20/08, at 7–8, ¶¶ 17, 20–23. The trial court initially agreed. Trial Court Opinion, 12/13/12, at 7.

Specifically, the trial court determined that the review conducted by Dr. Cavallo did not comport with the statutory and regulatory requirements governing the performance of peer reviews. *Id.* at 5–6. Those requirements in pertinent part are as follows.

> **Peer review plan.**—Insurers shall contract jointly or separately with any peer review organization established for the

9. Our Supreme Court has noted there "may be due process concerns with the statute," but absent a constitutional challenge, we are confronted, as was the Court in *Herd*, only with an issue of statutory interpretation. *Herd, supra* at 1067.

purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations **conform to the professional standards of performance** and are medically necessary. . . .

75 Pa.C.S.A. § 1797(b)(1)(emphasis added). "A PRO shall provide a written analysis, including specific reasons for its decision, to insurers. . . . Without the written analysis, the review may not be considered an initial determination. . . ." 31 Pa.Code § 69.52(e).

**PRO standards for operation.**

. . .

(e) A PRO **shall** apply National, or when appropriate, regional norms in conducting determinations. If National and regional norms do not exist, a PRO shall establish written criteria to be used in conducting its review **based upon typical patterns of practice in the PRO's geographic area.**

*Id.* § 69.53(e) (emphasis added).

Based on these provisions and the facts underlying this case, the trial court determined as follows.

IMX and Dr. Cavallo [did] not compl[y] with Section 69.53(e) governing PRO standards for operation, thus rendering Dr. Cavallo's peer review report not only invalid but a clear abuse of the peer review procedure by Dr. Cavallo, and likewise displayed a rather blatant disregard by IMX for even minimal safeguards for fairness and accuracy envisioned by the Act.

Trial Court Opinion, 12/13/12, at 7.

Section 69.53(e) clearly states that *a PRO shall establish written criteria to be used in conducting its reviews based upon typical patterns of practice in the*

*PRO's geographic area of operation.* Dr. Cavallo testified at trial that he was "instructed by IMX to utilize literature that is accepted," since there are no national or regional norms that exist for conducting determinations in this case. (N.T. 128). When questioned further, Dr. Cavallo admitted that he (Dr. Cavallo) selected the journals he used to complete his peer review report. (N.T. 129–130). It is obvious to the Court, that the Legislature constructed that pertinent portion of the statute requiring the PRO to establish the criteria to be used for the evaluation from accepted professional sources to ensure that there is some valid standard against which the challenged medical treatment is being judged by the peer reviewer. That certainly did NOT occur in this case.

*Id.* at 5 (emphasis in original). Having found the peer review invalid and the treatments at issue necessary and reasonable, the trial court awarded Doctor's Choice a remedy in accordance with Section 1797(b)(6) including attorney fees. Trial Court Order, 12/13/12, at 1.

Subsequently, in addressing Travelers' post-trial motions, the trial court granted that portion of Travelers' motion that challenged the award of attorney fees based on our Supreme Court's decision in *Herd,* which had been decided after its initial verdict. Trial Court Order, 6/21/13, 1–3. The trial court construed the *Herd* decision as interpreting Section 1797 to preclude an award of attorney fees notwithstanding the review by Dr. Cavallo and IMX was "devoid of any validity" as a peer review. *Id.* at 2. "It appears from the present state of the law that, once a peer review is pursued within the permitted time frame, the insurance carrier cannot be liable for attorneys' fees." *Id., citing Herd, supra* (emphasis added).

Doctor's Choice argues that *Herd* is distinguishable.

Travelers can not receive the benefit of *Herd* merely because Travelers tried to follow the peer review process. Either Travelers followed the peer review statute and regulations or it did not. The Trial Court unequivocally found as a matter of fact and law Travelers did not comply with the statute or regulations[.]

Doctor's Choice's Brief at 14.

*Herd* did not address the factual situation here where the [t]rial [c]ourt found that the peer review was invalid. It is urged that this Court hold that an invalid peer review is the same as no peer review, thus requiring attorney fees under § 1797(b)(4) and (b)(6). Without such a decision insurance carriers will be free to use invalid peer reviews to continue to deny victims medical care.

*Id.* at 16–17. Additionally, Doctor's Choice maintains that this Court's decision in *Levine v. Travelers Property Cas. Ins. Co.*, 69 A.3d 671 (Pa.Super.2013), supports its position. Doctor's Choice's Brief at 14.

Travelers contends the trial court correctly applied *Herd.* "Even if the peer review is deemed invalid based on the alleged conduct of the PRO, attorneys' fees cannot be awarded under Sections 1797(b)(4) and (6) as long as the carrier dutifully challenged the treatment before a PRO." Travelers' Brief at 9. "[T]he *Herd* Court specifically stated that attorney's fees are only appropriate when treatment has not been *'challenged before a PRO.'* Importantly, the *Herd* case *did not* state 'challenged through a valid peer review.' " *Id.* at 10, *citing Herd, supra* at 1067 (emphasis in original). "[T]here is nothing in the *Herd* decision that indicates or even implies that any other factors should be considered and, therefore, where [attorney] fees are sought pursuant to Section 1797, it is irrelevant whether the peer review is judicially determined to be invalid." Travelers' Sur Reply Brief at 4. Travelers also argues *Levine* is inapplicable because its holding was based on a finding that the subject challenged bills had not been "submitted . . . to a PRO." Travelers' Brief at 10.

■ Reduced to its most elemental formulation, we can state the issue raised by the parties as follows. Whether the language of Section 1797(b)(4), to wit, "challenged before a PRO," for the purpose of limiting an insurer's liability for attorney fees, should be interpreted as merely envisioning procedural compliance in referring bills for questioned treatment to a PRO, or should be interpreted as encompassing a valid completed peer review. Based on our careful consideration of the statutory language, the regulatory scheme, and the pertinent precedent from this Court and our Supreme Court, we espouse the latter construction.

In *Herd,* our Supreme Court reviewed and rejected this Court's interpretation of Section 1797(b) as authorizing an award of attorney fees by a trial court when it determines that contested treatments are reasonable and necessary, whether or not the insurer's refusal was submitted for peer review. Our Supreme Court emphasized the "general American rule that there can be no recovery of attorney's fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties, or some other established exception." *Herd, supra* at 1066 (citation omitted). Construing the language of Section 1797(b)(4) and 1797(b)(6), the *Herd* Court concluded "both sections by their explicit terms at least, apply only in the circumstance in which an insurer has not pursued peer review." *Id.* Additionally, our Supreme Court in *Herd* noted that Section 69.52(m), does not authorize an award of attorney fees. *Id.* Thus the *Herd*

Court held "the Legislature has provided for fee awards only in relation to matters pursued under subparagraph (b)(4), *see* 75 Pa.C.S. § 1797(b)(6), which applies only to insurer refusals-to-pay for treatment 'the reasonableness or necessity of which the insurer *has not challenged* before a PRO' " *Herd, supra* at 1067 (emphasis added in *Herd*). In the *Herd* case, the peer review performed by the PRO and relied upon by the insurer was valid. As such, the *Herd* Court was not confronted with defining of the statutory phrase "challenged before a PRO." Rather, the *Herd* Court only clarified the effect of a conceded "challenge before a PRO." The *Herd* decision did not speak to the circumstances of the instant case, where an insurer relies on a report from a PRO that is not a valid peer review. Accordingly, we conclude *Herd* is not dispositive of the issue in this case.

Rather, we deem this Court's decision in *Levine* to be more apropos to the issue presented in this appeal. In *Levine*, the insurer referred its challenge to certain bills from the provider for contested treatments to a PRO for the performance of an independent medical evaluation (IME). *Levine, supra* at 676. Based on the results of the IME, the insurer refused payment to the provider. The insured filed suit and the trial court determined that the charges were reasonable and necessary and the insurer was in breach of the policy. As part of the judgment, the trial court awarded attorney fees pursuant to Section 1797(b)(6). The insurer argued that, for the purposes of the MVFRL, an IME qualifies as a peer review. *Id.* at 675–676. The insurer further argued that its reliance on the IME in refusing payments to the provider shielded it from

liability for attorney fees under Section 1797(b)(4) and (6) of the MVFRL.[10] *Id.*

The *Levine* Court held that "an IME is not peer review as defined in § 1797 of the MVFRL.... The fact that the IME may have been procured by an entity that is an approved PRO, or that he reviews medical records, does not convert an IME into peer review." *Id.* at 679. The *Levine* Court concluded, "the charges and treatment at issue were not peer reviewed." *Id.* at 680. Accordingly, the *Levine* Court held that the trial court did not err in awarding attorney fees under Section 1797(b)(6). *Id.*

■ It is clear from *Levine*, therefore, that the phrase "challenged before a PRO" as employed in Section 1797(b)(4) requires more than a mere referral to a PRO of bills for contested treatment provided to its insured. Such referral must result in a peer-reviewed determination upon which an insurer can rely in deciding whether to pay the bills. A determination by a PRO based on anything other than a peer review as specifically set forth in Section 69.52(e) of the Code, for example an IME, is not a challenge before a PRO as contemplated by Section 1797(b)(4).

This conclusion is in concert with the construction of the peer review statute as a whole.

The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. 1 Pa. C.S.A. § 1921(a); *Commonwealth v. Drummond*, 775 A.2d 849, 855–56 (Pa.Super.2001) (*en banc*) (stating that appellate courts must evaluate each section of a statute because there is a pre-

---

**10.** The insurer also argued that it based its refusal on an earlier peer review, but the *Levine* panel determined that the record be- lied the contention as testimony revealed that, as to the bills at issue, only the IME was referenced as a reason for refusal. *Id.* at 678.

sumption that the legislature intended for the entire statute to be operative). *Commonwealth v. Webbs Super Gro Prods., Inc.*, 2 A.3d 591, 594 (Pa.Super.2010).

The instant statute references a PRO's peer review **determination** as the triggering event affecting an insurer's obligation to pay a bill for contested treatment. *See* 75 Pa.C.S.A. § 1797(b)(2) (permitting insurer, insured or provider to request reconsideration of a peer review determination by a PRO); (b)(3) (prescribing insurer's options pending PRO peer review determination); (b)(5) (prescribing insurer's obligations upon receipt of a PRO's peer review determination in favor of provider or insured). Additionally, the MVFRL defines "necessary medical treatment and rehabilitative services" as follows.

> Treatment, accommodations, products or services which are determined to be necessary by a licensed health care provider unless they shall have been **found or determined** to be unnecessary by a State-approved Peer Review Organization (PRO).

*Id.* § 1702 (emphasis added).

The Code clarifies that "[w]ithout the written analysis [from the PRO], the [peer] review may not be considered an initial determination and unpaid provider bills subject to the review must be paid by the insurer." 31 Pa.Code § 69.52(e). Thus, Travelers' assertion that our Supreme Court's holding in *Herd* merely requires "that if treatment is sent to be reviewed through a peer review, attorneys' fees cannot be awarded under Section 1797(b)," is not well founded. Travelers' Brief at 4 (emphasis added).

■ We cannot interpret a statute in a manner that yields an absurd result. *See In Re B.A.M., supra.* If a mere referral of disputed treatments to a PRO

was sufficient to remove a provider's right to appeal under Section 1797(b)(4), the remaining provisions relative to the actual determination of the PRO would be rendered meaningless. As illustrated by this Court in *Levine*, it is the determination of a PRO through the performance of a peer review that constitutes a "challenge before a PRO" for the purposes of Sections (b)(4) and. (b)(6). *Levine, supra.* Since the trial court determined no peer review determination was made in this case, it follows that Travelers did not question the reasonableness or necessity of the treatments based on a challenge to a PRO.

We recognize that in *Levine* the insurer requested an IME from the PRO, while instantly Travelers requested IMX perform a peer review. In turn, however, IMX and Dr. Cavallo failed to adhere to the regulations and procedures necessary to perform a peer review. Travelers thus argues, "[n]ot only is it illogical to impute IMX's conduct ... to Travelers in this case, there is no legal basis for doing so." Travelers' Brief at 8. We disagree.

While Section 69.53 of the Code is addressed to the conduct of PROs, Section 69.52 of the Code outlines the threshold considerations an insurer must contemplate before referring contested treatments to peer review.

> (a) A provider's bill shall be referred to a PRO only when circumstances or conditions relating to medical and rehabilitative services provided cause a prudent person, **familiar with PRO procedures, standards and practices,** to believe it necessary that a PRO determine the reasonableness and necessity of care....

31 Pa.Code § 69.52(a) (emphasis added). Accordingly, insurers are presumed to possess a full understanding of the nature of a valid peer review and its attendant procedures and requirements. Further, a PRO

must provide insurer with "a written analysis including specific reasons for its decision." *Id.* § 69.52(e).

█ Thus, an insurer's decision to refuse payment is informed by the full analysis of the peer review, not merely its conclusion. Where a PRO provides a conclusion that is based on an analysis other than a peer review, an insurer is free to rely on it as it pleases, but it is not a substitute for a peer review, which is a specific type of review based on objective professional norms. Other types of review may well provide an insurer with a reason to question whether a given treatment, service or product is reasonable and necessary, but it does not implicate Section 1797(b) merely because it was performed by a PRO.

We further conclude that holding an insurer responsible for the compliance of its selected PRO is neither illogical nor without legal basis. An insurer, unlike an insured or a provider, due to its contractual relationship is in a position to seek compensation from a PRO for any breach of the PRO's contract with an insurer to provide a requested peer review. In the instant case, Doctor's Choice alleged in its complaint that IMX failed to perform a peer review in compliance with the Code regulations. Travelers could have cross-filed against IMX for any financial loss it suffered due to IMX's failure to perform the requested peer review.[11] Additionally as our Supreme Court recognized, "[o]nly the insurer participates in the peer review process.... The detachment and neutrality required of a fact-finder is conspicuously absent in the contractual relationship between a PRO and an insurer." *Terminato, supra* at 1291.

In light of the foregoing, we construe the relevant language of Section 1797(b)(4) of the MVFRL, to wit, "challenged before a PRO," to mean a completed, compliant and valid peer review determination. In other words, we conclude the Legislature intended the phrase "challenged before a PRO" to mean the successfully completed peer review process, not merely an attempt to invoke that process. Accordingly, we conclude the trial court erred in determining that Doctor's Choice could not recover attorney fees pursuant to Section 1797(b)(6) of the MVFRL based on Travelers' mere referral of the disputed bills to a PRO when no valid peer review was performed.[12] We therefore, reverse the portion of the trial court's order of June 21, 2013, that granted, in part, Travelers' post trial motion and vacated its award of attorney fees.[13] We vacate the August 7, 2013 judgment and remand for reinstatement of an appropriate attorney fee award pursuant to Section 1797(b)(4) of the MVFRL.

Order reversed. Judgment vacated. Case remanded. Jurisdiction relinquished.

---

11. Travelers contends it did not have notice that IMX's review failed to comply with Code Section 69.53(e) until the trial court so ruled. Travelers Brief at 20. However, it is apparent from Dr. Cavallo's written report that there is no reference to any national or regional norms, and no reference to "written criteria ... based upon typical patterns of practice in the PRO's geographic area" as required by the Code. 31 Pa.Code § 69.53(e); *see also* N.T., 6/26/12, at 41, 99, Plaintiff's Exhibit # 13. Further, Dr. Cavallo noted his conclusion was based on his "clinical opin-

ion" as opposed to being based on a comparison of the questioned treatments to such objective norms. *See* N.T., 6/26/12, at 41, 99, Plaintiff's Exhibit # 13.

12. Based on our resolution of Doctor's Choice's first issue, we need not address its remaining allegations of error.

13. This relief renders the trial court's disputed August 1, 2013 order moot.