**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | | |
|---|---|---|
| DOCTOR'S CHOICE PHYSICAL MEDICINE & REHABILITATION CENTER, P.C. (LASELVA), | : | No. 146 MAP 2014 |
| | : | |
| | : | Appeal from the Order of the Superior |
| | : | Court at No. 1419 MDA 2013 dated |
| Appellee | : | 5/2/14 reconsideration denied 6/25/14 |
| | : | reversing the 6/21/13 order and |
| | : | vacating judgment entered 8/7/13 of the |
| v. | : | Dauphin County Court of Common |
| | : | Pleas, Civil Division, at No. 2008 CV |
| TRAVELERS PERSONAL INSURANCE | : | 16124 and remanding |
| COMPANY, | : | |
| | : | |
| Appellant | : | ARGUED: October 7, 2015 |

## OPINION

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED: December 21, 2015**

This appeal concerns ongoing controversy over the availability of attorneys' fee awards against insurance companies that have invoked the peer-review provisions of the Motor Vehicle Financial Responsibility Law, which also was the context of this Court's recent decision in *Herd Chiropractic Clinic v. State Farm Mutual Automobile Insurance Co.*, 619 Pa. 438, 64 A.3d 1058 (2013).

In 2004, Angela LaSelva sustained injuries in a motor vehicle accident. She treated with David G. Novatnak, D.C., a licensed chiropractor practicing with Appellee Doctor's Choice Physical Medicine and Rehabilitation Center, P.C. ("Provider"). Provider submitted invoices for the services directly to Ms. LaSelva's first-party benefits insurance carrier, Appellant Travelers Personal Insurance Company ("Insurer"), as

required per the Motor Vehicle Financial Responsibility Law.[1]  *See* 75 Pa.C.S. §1797(a). *See generally Herd*, 619 Pa. at 440, 64 A.3d at 1060 (relating that Section 1797(a) of the MVFRL requires providers to seek remuneration directly from insurance carriers and bars provider recourse against covered patients relative to the difference between the provider's ordinary charges and those paid by insurers).

Insurer later requested peer review through IMX Medical Management Services ("IMX"), a peer review organization ("PRO").  *See* 75 Pa.C.S. §1797(b)(1).  *See generally Herd*, 619 Pa. at 441, 64 A.3d at 1060 (explaining that the MVFRL establishes a process by which insurers may contest their obligations to fund treatment via implementation of a "peer review plan," entailing contracts with "peer review organizations" approved by the Insurance Department to evaluate the reasonableness and necessity of treatment).  IMX, in turn, enlisted Mark Cavallo, D.C., to conduct the peer review, and Dr. Cavallo issued a report deeming certain of the treatments provided by Dr. Novatnak to have been unnecessary.  Based on this report, Insurer denied reimbursement for the treatment aspects couched as excessive.

Provider opposed this withholding and commenced a civil action against Insurer in the court of common pleas.  Among other things, the complaint alleged that all treatments undertaken through Provider were reasonable and necessary and that the review conducted by IMX did not comport with the mandates of Section 1797 of the MVFRL.  Furthermore, Provider asserted that IMX failed to comply with requirements of the Pennsylvania Code directing PROs to apply national or regional norms in their determinations or, where such norms do not exist, to establish written criteria to be used in conducting reviews.  *See* 31 Pa. Code §69.53(e).  As relevant here, the complaint

---

[1] Act of Feb. 12, 1984, P.L. 26, No. 11 (as amended 75 Pa.C.S. §§1701-1799.7) (the "MVFRL").

included a specific demand for attorneys' fees per Section 1797(b)(6) of the MVFRL, which prescribes:

> If, *pursuant to paragraph (4)*, a court determines that medical treatment [was] medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge *and all attorney fees*.

75 Pa.C.S. §1797(b)(6) (emphasis added). Material to the present case, the cross-referenced paragraph -- Section 1797(b)(4) -- pertains only to court challenges of carrier withholdings where "the insurer *has not challenged* [the reasonableness or necessity of treatment] before a PRO." *Id.* §1797(b)(4) (emphasis added).

After conducting a bench trial, the common pleas court entered a verdict in Provider's favor, encompassing an award of attorneys' fees of approximately $39,000.[2] In its supporting analysis, the common pleas court initially expressed substantial misgivings about the peer-review process, as follows:

> The peer review process established under the MVFRL has long been viewed with suspicion by our courts. The Pennsylvania Supreme Court has discerned that because only the insurer participates in the peer review process, any claim of neutrality is suspect. The Court stated, "the detachment and neutrality required of a fact-finder is conspicuously absent in the contractual relationship between a PRO and an insurer." *Terminato v. Pennsylvania National Ins. Co.*, [538 Pa. 60, 68,] 645 A.2d 1287, 1291 ([] 1994). . . . The insurance company initially pays the PRO for its services and the insured plays no role in the selection process, further confirming that PROs have a strong financial incentive to appear fair in the eyes of the insurance company. As such, the Courts have determined that a PRO does not have the characteristics of an independent body for which the Legislature would seek judicial deference. [*See*

---

[2] The principal amount of the award was approximately $28,000. Statutory interest of twelve percent was also awarded, as well as costs.

*Lehman v. State Farm Ins. Cos.*, 140 P.L.J. 78, 82 (C.P. Allegheny 1992)].

*Doctor's Choice Physical Med. & Rehab. Ctr., P.C. v. Travelers Pers. Ins. Co.*, No. 2008 CV 16214, *slip op.* at 4-5 (C.P. Dauphin Dec. 13, 2012). According to the court, the circumstances at hand present "a classic example of that well-founded suspicion[.]" *Id.* at 5.

The common pleas court then specifically rejected Dr. Cavallo's report and associated opinions for various reasons, including his failure to proceed according to national or regional norms or pre-established written criteria. *See, e.g., id.* at 7 ("It was apparent to the Court during the trial that IMX and Dr. Cavallo had not complied with Section 69.53(e) governing PRO standards for operation, thus rendering Dr. Cavallo's peer review report not only invalid but a clear abuse of the peer review procedure[;] . . . likewise [the report] displayed a rather blatant disregard by IMX for even minimal safeguards for fairness and accuracy envisioned by the Act."). Moreover, the court determined that all treatments rendered by Dr. Novatnak were reasonable and necessary in providing essential management of the pain deriving from Ms. LaSelva's injuries.

The verdict against Insurer pre-dated the issuance of this Court's decision in *Herd*, which held that Section 1797 of the MVFRL does not serve as a basis for attorneys' fee awards on provider challenges to peer-review determinations. *See Herd*, 619 Pa. at 451, 64 A.3d at 1066. The carrier invoked *Herd* during the post-trial motions process, and, in response, the common pleas court vacated the award of attorneys' fees. In its order, the court deemed itself bound by *Herd* but nonetheless took the opportunity to reiterate its position that the review conducted by Dr. Cavallo was "devoid of any validity," such that "no valid peer review was ever accomplished." Order dated June 21, 2013, in *Doctor's Choice*, No. 2008 CV 16214, at 2. Additionally, the court

opined as follows: "[T]his patently unjust result is solely within the purview of the General Assembly to remedy, and we encourage our Legislature to immediately address this matter." *Id.* at 3.

On appeal, the Superior Court reversed the decision to strike the fee award. *See Doctor's Choice Physical Med. & Rehab. Ctr., P.C. (LaSelva) v. Travelers Pers. Ins. Co.*, 92 A.3d 813 (Pa. Super. 2014). Centrally, the intermediate court focused on the common pleas court's determination that no valid peer review determination had been realized, given Dr. Cavallo's failure to ground his analysis in national norms, regional norms, or pre-established written standards as required per Section 69.53(e) of the Pennsylvania Code. *See, e.g.*, *id.* at 817-18. In such circumstance, the court reasoned, fee-shifting was required by Section 1797(b)(6), notwithstanding *Herd*.

The Superior Court acknowledged that, per the plain-meaning interpretation of Section 1797 applied in *Herd*, "only an insurer's refusal to pay that is not based on a peer review determination under Section 1797(b) implicates [an] attorney fee award[.]" *Id.* at 817. Because, however, the common pleas court had determined that the review conducted by Dr. Cavallo did not comport with the statutory and regulatory requirements governing the performance of peer review, the intermediate court refused to recognize, for purposes of Section 1797(b)(4), that Insurer had "challenged [the reasonableness and necessity of treatment by Dr. Novatnak] before a PRO." 75 Pa.C.S. §1797(b)(4). In this regard, the court construed the statutory term "challenged before a PRO" as necessarily "encompassing a *valid completed* peer review." *Doctor's Choice*, 92 A.3d at 819 (emphasis added); *see also id.* at 822.

In support of this construction, the Superior Court relied on *Levine v. Travelers Property Casualty Insurance Co.*, 69 A.3d 671, 679 (Pa. Super. 2013) (holding that an insurer's denial of payment of provider invoices based on an independent medical

examination concerning a lack of causal relation of an injury to an accident did not encompass a review of the reasonableness and necessity of subsequent treatments in the nature of peer review for purposes of Section 1797). In this regard, the intermediate court read *Levine* very broadly as establishing that a carrier's referral of provider invoices for contested treatment to a PRO "must result in a peer-reviewed determination upon which an insurer can rely in deciding whether to pay the bills." *Doctor's Choice*, 92 A.3d at 820. Responding to Insurer's argument that deficiencies in peer review occasioned by a PRO should not be attributed to insurance carriers, the court admonished that "insurers are presumed to possess a full understanding of the nature of a valid peer review and its attendant procedures and requirements." *Id.* at 821 (referencing 31 Pa. Code §69.52(a) and (e)). Moreover, the court noted that carriers are uniquely positioned to hold PROs accountable for any breaches of their contracts, *see id.* at 822; whereas, medical services providers lack any such recourse.

Finally, the Superior Court indicated that interpreting the phrase "challenged before a PRO" in Section 1797(b)(4) to mean the simple act of advancing a challenge would be absurd. *See id.* at 821. The intermediate court opined, without further explanation, that such interpretation would render the remaining provisions of Section 1797 concerning the actual determinations of PROs meaningless. *See id.*

We allowed appeal to evaluate the correctness of the Superior Court's construction that Insurer "has not challenged" the reasonableness and necessity of treatment before a PRO, 75 Pa.C.S. §1797(b)(4), even though the carrier did in fact submit relevant treatment records to a PRO for peer review in a timely fashion. Our consideration is plenary. *See, e.g., Six L's Packing Co. v. WCAB (Williamson),* 615 Pa. 615, 629, 44 A.3d 1148, 1157 (2012).

Presently, Insurer observes that the word "challenge" is commonly defined as "to dispute" or "to question."  Reply Brief for Appellant at 2 (quoting BLACK'S LAW DICTIONARY 223 (7th ed. 1999)).  It is the carrier's core position that it did precisely that when it submitted Provider's invoices to a PRO for peer review.  Furthermore, Insurer maintains that the Superior Court's contrary construction of the phrase "challenged before a PRO," as it appears in Section 1797(b)(4), conflicts squarely with this Court's determination that "[t]here is . . . simply no express statutory authorization for fee shifting on provider challenges to peer-review determinations."  *Herd*, 619 Pa. at 451, 64 A.3d at 1066.

From the perspective of Insurer and its *amici*, the Pennsylvania Defense Institute and Insurance Federation of Pennsylvania, allocating the consequences of deficiencies in peer review to the insurance industry effectively requires carriers to oversee the regulatory compliance of PROs.  They observe, however, that the Legislature expressly has directed such oversight responsibility to the Insurance Department.  *See* Brief for Appellant at 18 (citing 31 Pa. Code §69.55); *accord* Brief for *Amici* Pa. Def. Inst. & Ins. Fed'n of Pa. at 4 ("[T]he promulgation and amendment, as well as the interpretation, of regulations connected with the peer review process are within the purview of the Pennsylvania Department of Insurance which is the sole policing authority of Peer Review Organizations[.]").  Insurer also cautions that carriers must refrain from involving themselves in the review process to "avoid potentially biased peer reviews."  Brief for Appellant at 20; *see also id.* at 22 ("Once [Insurer] made the referral to IMX, the peer review process was out of its hands, as it should be." (citing 31 Pa. Code §69.55(b)(1))); Brief for *Amici* Pa. Def. Inst. & Ins. Fed'n of Pa. at 7 ("The Superior Court's holding essentially punishes [Insurer] for utilizing an approved PRO, where approval can only come from the [Insurance] Department.").  In this regard, Insurer also highlights that the

Pennsylvania Code requires PROs to provide a certificate of independence when applying to the Insurance Department for approval to provide peer review services. *See* 31 Pa. Code §69.55(b)(1).

As to the *Levine* decision, Insurer distinguishes the case as entailing a scenario in which a carrier had not submitted the specific bills at issue to a PRO for review, but rather, inappropriately relied upon a prior independent medical examination to deny payment. *See Levine*, 69 A.3d at 679. According to Insurer, although this independent medical examination had been obtained through a PRO, this circumstance was idiosyncratic and wholly inconsequential to the decision.

Responding to criticisms lodged by Provider and its *amicus* of the peer review scheme, Insurer asserts that these "seek only to cloud the straightforward issue presented to this Court, namely, whether the Superior Court improperly interpreted §1797 to allow attorneys' fees even when an insurer has 'challenged' the treatment at issue before a PRO, despite the *Herd* holding." Reply Brief for Appellant at 3. It is Insurer's position that the abstract claims of bias are misdirected, as these sorts of broader systemic concerns should be raised before the political branch.

Provider, on the other hand, and its *amicus* the Pennsylvania Association for Justice, view fee-shifting as the norm under Section 1797 and the unavailability of fee awards upon challenges submitted to peer review as "a very narrow exception to the mandatory award of attorney fees at §1797(b)(4)&(6)." Brief for Appellee at 11. In this vein, they find it to be entirely appropriate to deem the concept of a "challenge" within Section 1797(a)(4) as subsuming not only the submission of provider invoices to a PRO, but also a fully realized, valid peer-review determination. *See, e.g.*, *id.* at 25 ("Unless all the Legislative and the Insurance Department requirements are met an analysis is not a peer review."). Provider and its *amicus* reference a series of other

statutes as reflecting the proposition that the term "challenge" means "submission of an issue for proper procedural review and a procedurally correct result."[3]

Provider and its *amicus* also stress that insurance companies are sophisticated entities; carriers are required to apprehend the requirements of the written analysis accomplished as a core facet of the peer review process, *see* 31 Pa. Code §69.52(a); they maintain contractual relationships with PROs and can require them to perform valid peer reviews; and they have the ability to assert breach-of-contract claims if PROs deliver invalid reports which cause carriers financial harm. Consistent with the Superior Court's rationale along these lines, Provider and its *amicus* emphasize that medical services providers lack any such remedy, but instead, must sue carriers.

Additionally, Provider and its *amicus* strongly differ with Insurer's contention that the Superior Court's decision places carriers in the position of regulating PROs. From their perspective, material violations of the Pennsylvania Code were apparent from the face of Dr. Cavallo's report and were subject to ready apprehension and redress by Insurer. *See, e.g.*, Brief for Appellee at 21 ("All [Insurer] had to do was a cursory review by a prudent person familiar with [applicable] [r]egulations to determine the report was invalid.").

Throughout their submissions, Provider and its *amicus* harken back to the tone of the *Terminato* decision questioning the fairness of the peer review process. *See, e.g.*, *id.* at 16 ("The Legislature as a matter of public policy mandated an award of attorney fees to help the health care provider when confronted with exactly the 'scorched earth' tactics insurance carriers use to deny payment of medical bills that are as a matter of fact reasonable and necessary." (referencing *Herd*, 419 Pa. at 458-59, 64 A.3d at 1071

---

[3] Brief for Appellee at 13 (citing 25 P.S. §3146.8), 53 P.S. §10916.1, 75 Pa.C.S. §1786(5), 23 Pa.C.S. §2711(c)(3)(i), 20 Pa.C.S. §908(a), and 77 P.S. §774.2); Brief for *Amicus* Pa. Ass'n for Justice at 17 (same).

(Baer, J., dissenting))). It is their position that fee shifting serves as a means for counteracting bias and, more broadly, ensuring fairer peer review. *See, e.g.*, *id.* at 33. Along these lines, Provider asserts that insurance companies often refuse payment as a tactic to reduce verdicts and the settlement value of personal injury cases. According to Provider, "[t]his is an extraordinary example of system failure." *Id.* at 42.

In *Herd*, this Court explained that Pennsylvania law embodies the American rule, per which there can be no recovery of attorneys' fees from an adverse party in litigation, absent express statutory authorization, clear agreement by the parties, or some other established exception. *See Herd*, 619 Pa. at 450, 64 A.3d at 1066 (citing *Merlino v. Delaware Cnty.*, 556 Pa. 422, 425, 728 A.2d 949, 951 (1999)). Like *Herd*, this case centers upon whether there is "*explicit*" statutory authorization within Section 1797 for fee-shifting where a carrier has tendered a timely challenge to the reasonableness or necessity of treatment to a PRO. *Id.* at 450-51 nn.10 & 11, 64 A.3d at 1066 nn.10 & 11 (emphasis added). Upon review, we agree with Insurer and its *amici* that there is no such explicit authorization.

The Superior Court's construction of the statutory term "challenged before a PRO" as necessarily "encompassing a *valid completed* peer review," *Doctor's Choice*, 92 A.3d at 819 (emphasis added), does not reflect direct application of explicit language. Along these lines, as Insurer has explained, a conventional understanding of the word "challenge" is more modest. *See generally* 1 Pa.C.S. §1921(b) (explicating that, when the words of a statute are clear and free from ambiguity, their plain meaning is the governing indication of legislative intent). Moreover, the term is otherwise plainly utilized within Section 1797 merely to signify a carrier's submission of provider invoices to a PRO for review. *See, e.g.*, 75 Pa.C.S. §1797(b)(1) (establishing a general rule that a "challenge" must be made to a PRO within ninety days of the insurer's receipt of a

provider's bill for treatment or services); *id.* §1797(b)(3) (delineating that, if an insurer "challenges" provider invoices within thirty days of receipt, the carrier need not tender payment pending a determination by the PRO).

Even within the four corners of Section 1797(b)(4), provider challenges and insurer challenges bear parallel treatment. *See* 75 Pa.C.S. §1797(b)(4) ("A provider of medical treatment . . . may *challenge* before a court an insurer's refusal to pay for past or future medical treatment . . ., the reasonableness or necessity of which the insurer has not *challenged* before a PRO." (emphasis added)). In either event, there simply is no *express* language in the statute signifying that a "challenge" necessarily encompasses ensuing, completed, valid review.[4]

In substance, we believe that the Superior Court's broader construction of the concept of a challenge was policy driven. However, as this Court explained in *Herd*:

> [F]ee shifting raises a host of mixed policy considerations in and of itself, which this Court has found are best left to the General Assembly, in the absence of contractual allocation or some other recognized exception to the general, American rule. The Legislature's failure to adjust Section 1797 over time as imperfections have been revealed by experience, while unfortunate, does not alter the functions ascribed to our respective branches of government. Accordingly, in the absence of a demonstrated constitutional infirmity, courts generally must apply plain terms of statutes

---

[4] We recognize that, in one instance, Section 1797 utilizes the term "challenge" as a broader shorthand encompassing the services of provider attorneys in advancing and vindicating a court challenge. *See* 75 Pa.C.S. §1797(b)(6). We have previously noted, however, that Section 1797 is not clearly written throughout. *See Herd*, 619 Pa. at 451, 64 A.3d at 1066. Given the strict principle of statutory interpretation applicable to fee shifting, however, ambiguities militate in Insurer's favor here. Accordingly, the unconventional usage of the concept of a challenge in Section 1797(b)(6) does not impact its more ordinary application in the previous subsections of the statute or otherwise segue into an *explicit* authorization of attorneys' fees in scenarios in which carriers have commenced timely peer-review challenges.

as written; they are to confine their efforts to effectuate legislative intent – above and beyond the prescription of written laws – to ambiguous provisions; and they are to enforce the longstanding responsibility allocated to the policymaking branch to provide for fee shifting, when it is deemed appropriate, through explicit pronouncements.

*Herd*, 619 Pa. at 451-52, 64 A.3d at 1066-67.

As noted above, the Superior Court also asserted, without any developed explanation, that a plain-meaning interpretation of the word "challenged" as it appears in Section 1797(b)(4) would render the remaining provisions of the statue concerning the actual determinations of PROs meaningless. *See Doctor's Choice*, 92 A.3d at 821. In point of fact, however, every provision within Section 1797 addressing determinations retains meaning while according "challenge" its ordinary connotation. For example, an insurer may request a reconsideration of a PRO's initial "determination" per Section 1797(b)(2). 75 Pa.C.S. §1797(b)(2). A carrier that initiates a challenge within 30 days need not pay provider invoices pending the "determination." *Id.* at §1797(b)(3).

In this regard, fee-shifting simply is not the overarching thrust of the enactment. Rather, this dynamic is a discrete facet, and, throughout the statute, the concept of "determination" plainly retains meaning independent of the fee-shifting inquiry. Respectfully, it is the Superior Court's cryptic pronouncement of "absurdity" that lacks foundation.

As to the *Levine* decision, the dispositive analysis turned on the fact that the independent medical examination in issue concerned the causal association between an injury and an accident, not the reasonableness or necessity of later treatment. *See Levine*, 69 A.3d at 679. The case does not fairly stand for the broader proposition that the reasonableness and necessity of treatment is not "challenged before a PRO," for

Section 1797(a)(4) purposes, even though a carrier in fact did advance a timely challenge.[5]

Finally, none of the statutes referenced by Provider or its *amicus* as examples of similar applications of the word "challenge" utilizes the term to mean a contest that is resolved properly by the body charged with making a determination. *See supra* note 3. Ultimately, the disposition of this appeal turns on a straightforward understanding of a "challenge" and the appreciation that "[t]here is . . . simply no express statutory authorization for fee shifting on provider challenges to peer-review determinations." *Herd*, 619 Pa. at 451, 64 A.3d at 1066.

This Court remains cognizant of the shortcomings of the peer-review regime. We have no reasonable means, however, of assessing the degree to which these may be offset by the benefits of cost containment and potentially lower insurance premiums available to the public at large.[6] Rather, the Legislature is invested with the implements to conduct investigations, hearings, and open deliberations to address such salient policy matters. *Accord Seebold v. Prison Health Servs., Inc.,* 618 Pa. 632, 653, 57 A.3d 1232, 1245 (2012). In such landscape, we decline to deviate from conventional statutory interpretation to advance directed policy aims.

---

[5] In any event, the intermediate-court decision in *Levine* is not binding upon this Court. *See*, *e.g.*, *Commonwealth v. Sneed*, 587 Pa. 318, 330 n.12, 899 A.2d 1067, 1075 n.12 (2006).

[6] While the portrait depicted by Provider and its *amicus* spotlights the legitimate concern about unscrupulous insurers, it downplays the phenomena of unnecessary medical services and overbilling which, unfortunately, are also salient considerations in any balanced public-policy debate. The adjudicatory system, operating as it does on conventions such as decision-making by a mere preponderance of the evidence to facilitate the resolution of discrete civil controversies, is ill equipped to render broader legislative-type judgments with large-scale consequences.

The order of the Superior Court is reversed, and the matter is remanded for reinstatement of the modified verdict.

Messrs. Justice Eakin and Baer, Madame Justice Todd and Mr. Justice Stevens join this opinion.