J-A05041-17

2017 PA Super 256

| ENTERPRISE BANK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| FRAZIER FAMILY L.P., A PENNSYLVANIA LIMITED PARTNERSHIP | |
| Appellee | No. 1171 WDA 2016 |

Appeal from the Order Entered August 3, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 14-001375

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MOULTON, J.

OPINION BY MOULTON, J.:                    **FILED AUGUST 8, 2017**

Enterprise Bank ("Enterprise") appeals from the August 3, 2016 order entered in the Allegheny County Court of Common Pleas in favor of Frazier Family L.P., a Pennsylvania Limited Partnership ("Frazier") denying Enterprise's request for counsel fees.  We agree with the trial court that the relevant loan documents do not authorize Enterprise to collect counsel fees for work performed by its in-house counsel.  Accordingly, we affirm.

On December 28, 2012, Frazier executed and delivered in favor of Enterprise three loan documents in the principal amount of $421,000.  Frazier first signed a Business Loan Agreement ("Loan Agreement"), which contains the following provision:

> **Attorneys' Fees; Expenses.**  Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement.  Lender may hire or pay someone else to

help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

Loan Agreement, 12/28/12, at 5.

Second, Frazier signed a Promissory Note ("Note"), which contains the following provision:

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorney' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

Note, 12/28/12, at 2.

Third, Frazier signed an Open-End Mortgage and Security Agreement ("Mortgage") for the premises at 100 Highland Pines Court, Pittsburgh, Pennsylvania ("Mortgaged Premises") as security for repayment of the Note. The Mortgage contained the following provision:

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all

> reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate, any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

Mortgage, 12/28/12, at 12.

On January 30, 2014, Enterprise filed a complaint in mortgage foreclosure in the amount of $418,030.93 requesting, among other things, that Frazier pay Enterprise's reasonably incurred counsel fees. On May 2, 2014, Frazier filed preliminary objections, asserting that the language "pay or hire someone else" in the Note did not include Enterprise's in-house counsel. On January 13, 2015, the trial court appointed Kuzneski & Lockard, Inc., as receiver for the Mortgaged Premises.

On February 26, 2016, the receiver filed an amended motion for order of distribution. The order of distribution included a $512,777.15 payoff from Enterprise, dated December 2, 2015 ("Payoff"). "The Payoff contained an itemization for fees and expenses due and owing [Enterprise], including [counsel] fees through November 25, 2015 for $34,569.25. The basis for

these [counsel] fees is the time spent by [Enterprise]'s in-house legal counsel Joseph A. Fidler and paralegal Justina Fuller. . . .]. Opinion, 10/3/16, at 1-2 (unpaginated) ("1925(a) Op."). On February 29, 2016, the trial court entered a consent order directing the receiver to make distributions of the funds resulting from the sale of the Mortgaged Premises to Enterprise, Frazier, and other interested third parties. The consent order also directed the parties to submit to the trial court proposed findings of fact and conclusions of law regarding whether the contract permitted recovery of Enterprise's in-house counsel fees and, if so, whether the fees were reasonable.

In its proposed findings of fact and conclusions of law, Enterprise offered its interpretation of the relevant language from the Loan Agreement, the Note, and the Mortgage. It also included its in-house counsel's and in-house paralegal's billable rate and time entries. Enterprise asserted that these documents "clearly encompass [counsel] fees generated by in-house counsel." Enterprise's Proposed Findings of Fact and Conclusions of Law, 3/10/16, ¶ 27. Specifically, regarding the language "hire or pay someone else," Enterprise explained that it was "broad and not open to interpretation." *Id.* ¶ 28. Enterprise further asserted that it "hired" in-house counsel "to collect the debt and in this case, file a mortgage foreclosure" action. *Id.*

Frazier, in contrast, argued that the language "hire or pay someone else" did not include "general counsel and vice president of Enterprise Bank, Joseph Fidler." Frazier's Proposed Findings of Fact and Conclusions of Law, 3/10/16, ¶¶ 58, 61. Frazier understood this language as "clearly stat[ing] the intention of Enterprise Bank to 'hire' 'someone else' if needed." *Id*. ¶ 79. It claimed that because in-house counsel was in Enterprise's employ prior to the execution of the loan documents, Enterprise "did not hire or pay 'someone else' to recover any alleged obligation." *Id*. ¶ 81. Frazier stated that at the very least, the language was ambiguous.[1]

On August 3, 2016, following the parties' submissions, the trial court accepted Frazier's interpretation of the language in question and therefore denied Enterprise's request for counsel fees. Enterprise timely appealed to this Court.

Enterprise raises the following issue on appeal: "Whether the Trial Court erred in concluding that Enterprise, as mortgagee[,] was not entitled to be reimbursed its in-house [counsel] fees and costs as provided for in loan documents executed by Frazier, as mortgagor?" Enterprise's Br. at 4.

"Pennsylvania law embodies the American rule, per which there can be no recovery of [counsel] fees from an adverse party in litigation, absent

---

[1] Frazier further pointed out that Enterprise obtained a receiver who retained outside counsel, and that Frazier paid the receiver's counsel fees. *See* Consent Order, 2/29/16; Frazier's Br. at 5.

express statutory authorization, clear agreement by the parties, or some other established exception." ***Doctor's Choice Physical Med. & Rehab. Ctr., P.C. v. Travelers Pers. Ins. Co.***, 128 A.3d 1183, 1189 (Pa. 2015). Enterprise claims that the language in the loan documents covers payments to in-house counsel and, therefore, the contract serves as an exception to the American Rule.

Because "a mortgage is a contract," it is subject to principles of contract law. ***See Phila. Trust Co. v. Northumberland Cty. Traction Co.***, 101 A. 970, 974 (Pa. 1917). We have explained that "contract interpretation is a question of law" over which our standard of review is *de novo*. ***Miller v. Poole***, 45 A.3d 1143, 1145 (Pa.Super. 2012) (quoting ***Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.***, 916 A.2d 1183, 1188 (Pa.Super. 2007)). Therefore, "this Court is not bound by the trial court's interpretation" of a contract. ***Id.*** (quoting ***Ragnar***, 916 A.2d at 1188).

"When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement . . . ." ***Id.*** at 1146 (quoting ***LJL Transp., Inc. v. Pilot Air Freight Corp.***, 962 A.2d 639, 647 (Pa. 2009)). "[G]enerally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." ***Allstate Fire and Cas. Ins. Co. v. Hymes***, 29 A.3d 1169, 1172 (Pa.Super. 2011)

(quoting ***Prudential Prop. & Cas. Ins. Co. v. Colbert***, 813 A.2d 747, 750 (Pa. 2002)).

A contract provision is ambiguous when "it is reasonably susceptible [to] different constructions and capable of being understood in more than one sense." ***Miller***, 45 A.3d at 1146 (quoting ***Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.,*** 905 A.2d 462, 468 (Pa. 2006)). "Where a provision of a [contract] is ambiguous, [it] is to be construed . . . against . . . the drafter of the agreement." ***Prudential Prop. & Cas. Ins. Co. v. Sartno***, 903 A.2d 1170, 1174 (Pa. 2006) (quoting ***Standard Venetian Blind Co. v. Am. Empire Ins. Co.***, 469 A.2d 563, 566 (Pa. 1983)). Further, when "an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." ***Miller***, 45 A.3d at 1146 (quoting ***Ins. Adjustment Bureau, Inc.***, 905 A.2d at 468).

Enterprise argues that the language "hire or pay someone else" unambiguously includes its "hiring" of its own in-house counsel and paralegal. Frazier, on the other hand, argues that "hire or pay someone else" unambiguously excludes in-house counsel and paralegal fees. In the alternative, Frazier contends that any ambiguity should be construed against Enterprise.

The trial court found that the phrase "'someone else' . . . can be construed in a few different ways" and "none of the loan documents at issue define who 'someone else' is." 1925(a) Op. at 5. The trial court further stated that because Enterprise drafted the loan documents, "any ambiguity should be construed against it." *Id.* We agree.

After careful consideration, we conclude that the language "hire or pay someone else" is, at best, ambiguous. Frazier makes a strong case for the proposition that "someone else" necessarily means someone not then in Enterprise's employ. Otherwise, the meaning of the term is difficult to discern. For example, does the use of other in-house staff to recover the debt, before the involvement of any attorneys, constitute the hiring by Enterprise of "someone else"? If so, then all of Enterprise's employees would appear to be "someone else," a particularly peculiar reading of the term.

Nevertheless, especially in the Loan Agreement, when the phrase "hire or pay someone else" is read in conjunction with the broad authorization of the collection of "Lender's reasonable attorneys' fees," the phrase might plausibly be read to allow Enterprise to recover its in-house counsel fees. We therefore conclude that the language in the counsel fees' provisions is ambiguous. As such, it must be construed against the drafter, Enterprise. *See Prudential*, 903 A.2d at 1174; *Egyptian Sands Real Estate, Inc. v.*

***Polony***, 294 A.2d 799, 803 (Pa.Super. 1972).[2]  Accordingly, the trial court properly denied Enterprise's request for counsel fees.[3]

_____

[2] In ***PNC Bank, N.A. v. Kimbrough & Assocs., LLC***, by contrast, the loan document included language that specifically allowed the lender to recover the cost of in-house counsel and its staff.

> We may hire or pay someone else to help us collect this account if you fail to pay in accordance with this Agreement. You agree to pay our collection costs **(including, without limitation, the cost of in-house attorneys and staff)**, whether or not we hire anyone else to help us collect this account. This includes, subject to any limits under applicable law, our attorneys' fees and legal expenses whether or not there is a lawsuit . . . .

No. 6:13-CV-1558-orl-28KRS, 2015 WL 327533, at *12 (M.D. Fla. Jan. 23, 2015) (emphasis added).

[3] Because we find the contract language ambiguous, and construe it against Enterprise, we need not reach the broader question, briefed by the parties, of whether a lender in Pennsylvania may recover for the work of salaried, in-house counsel.  ***Compare Prison Legal News v. Stolle***, 129 F.Supp.3d 390, 398 (E.D. Va. 2015) (in-house counsel may recover fees for "litigation tasks that ordinarily would have been performed by outside counsel," but not "when merely acting as a liaison or corporate contact or representative") (quotation omitted), ***and AMX Enterprises, L.L.P. v. Master Realty Corp.***, 283 S.W.3d 506, 517 (Tex. App. 2009) (holding successful claimant may recover in-house counsel fees); ***with Burger King Corp. v. Mason***, 710 F.2d 1480, 1499 (11th Cir. 1983) ("[T]here is no Florida authority to justify, much less mandate, [counsel fees for the services of in-house counsel.]"), ***and In re Cummins Util., L.P.***, 279 B.R. 195, 207 (Bankr. N.D. Tex. 2002) (denying motion for in-house counsel fees on the ground that "[t]his item should be included in . . . overhead").  ***See also*** Nicholas N. Nierengarten, ***Fee-Shifting:  The Recovery of In-House Legal Fees***, 39 Wm. Mitchell L. Rev. 227 (2012) (discussing the controversy over whether in-house counsel fees are recoverable).

*(Footnote Continued Next Page)*

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/8/2017

*(Footnote Continued)* ————————