J-A01001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL SCARPIGNATO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SABRINA YA XUE | : | |
| | : | |
| Appellant | : | No. 1481 EDA 2022 |

Appeal from the Judgment Entered April 20, 2022
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2020-002552

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED FEBRUARY 02, 2023**

Sabrina Ya Xue (Buyer) appeals from the April 20, 2022, judgment entered after the trial court, in a non-jury verdict, found in favor of Michael Scarpignato (Seller). This case concerns a contract between the parties for the purchase and sale of property located in Wallingford, Pennsylvania. The court found both parties breached the contract based on their conduct over a two-year period. On appeal, Buyer claims the court erred: (1) by raising certain defenses *sua sponte* after the record was closed and rejecting her claims based on those defenses; and (2) by finding the "mutual mistake" doctrine voided the contract, Buyer materially breached the contract by not adequately communicating with Seller regarding "extras," and by not paying for those extras within an allotted time. Based on the following, we affirm.

The trial court summarized the stipulated facts and procedural history as follows:

> [Seller] is the owner of premises [at] 507 Hastings Avenue, Wallingford, Delaware County, PA (hereinafter "Property" or "the Property"). [Buyer] entered into a written Agreement of Sale contract on May 18, 2017, with [Seller], pursuant to which [Seller] agreed to sell to [Buyer] and [Buyer] agreed to purchase from [Seller], the Property [for approximately $400,000].
>
> [Buyer] paid purchase price deposits totaling $15,000 (hereinafter "Initial Deposit) to be held by [Seller]'s real estate agent pursuant to the Agreement of Sale. At the time the Agreement of Sale was executed, Property was in a state of disrepair and in need of substantial rehabilitation and renovation.
>
> As set forth in the Agreement of Sale, [Seller] and [Buyer] agreed to approve specifications for the rehabilitation and renovation of the Property, and [Buyer] was required to pay additional non-refundable deposits (hereinafter "Additional Deposits") for any "extras" requested by [Buyer] which were not contained in the aforementioned specifications.
>
> On May 25, 2017, [Buyer] approved and executed the specifications sheet, detailing planned specifications for the renovation, as required.
>
> [Seller] undertook rehabilitation and renovation of the Property. According to Testimony, [Seller] advanced labor and assumed costs for extras that were not reimbursed by [Buyer], nor did [Buyer] pay any Additional Deposits.
>
> On September 12, 2019, [Seller] provided [Buyer] with a list of alterations titled "Extras to date: 9/12/19" stating that additional deposits were required at that time in the amount of $20,308. The document stated that funds were to be made available within 72 hours.
>
> On September 18, 2019, [Seller] advised [Buyer] that he was terminating the Agreement of Sale for Breach of Contract related to Section 32(B)(2) of the Agreement of Sale which states that Seller will require non-refundable deposits for any "extras"

- 2 -

that were not signed off on or agreed to in the final plans and Specs.

Subsequent to [Seller]'s declaration of default of contract, [he] has further renovated and altered the house to his family's specifications, and his family permanently resides there with the benefit of the improvements, labor and materials many of which had been discussed with [Buyer].

In his [July 13, 2020] Complaint and through his Testimony, [Seller] contended that [Buyer]'s breach of the Agreement of Sale was a material breach. [Seller] requested [that he be able to retain] the $15,000 initial deposit made by [Buyer] as damages for [her] alleged material breach of the Agreement of Sale.

Trial Ct. Op., 6/15/22, at 2-3.

Seller also requested $50,000 for pecuniary loss as a result of being deprived of payment for labor, materials, carrying costs associated with Buyer's requested extras beyond the approved specifications.

Buyer filed an answer with new matter and counterclaims, alleging breach of contract requesting the return of her $15,000 deposit, and $50,000 in damages. She further sought a declaratory judgment as to the return of her deposit, specific performance, and an order that Seller transfer the Property to her after she pays all contractually required amounts. Seller subsequently filed an answer with new matter to Buyer's counterclaims.

A Non-Jury Trial was held on January 10, 2022. Subsequent to . . . the Findings of Fact and Conclusions of Law and Memorandums submitted to the Court, this Court issued a Verdict on February 1, 2022. In that Verdict, this Court found that:

a. The language in the Agreement of Sale was patently ambiguous.

b. **Both parties to this contract committed a material breach and the law will give relief to neither.**

c. No remedy of specific performance is available.

d. The escrowed $15,000 with no interest, was ordered to be released and paid to [Buyer], and each party was to assume their own costs and attorney fees. This Court found that neither party had any more duties under the contract.

e. All other claims and cross claims of both parties were denied and dismissed.

Trial Ct. Op. at 4 (emphasis added). Buyer filed post-trial motions, which were denied on March 16, 2022. Seller then filed a *praecipe* for entry of judgment on April 20, 2022. This appeal followed.

Buyer raises the following issues on appeal:

1. [Seller] did not assert or litigate certain defenses [to Buyer's counterclaims]. Did the trial court err by raising those defenses *sua sponte* after the record closed and rejecting claims based on them?

2. Did the trial court err by ruling that: (1) the "mutual mistake" doctrine voided the contract; (2) [B]uyer materially breached the contract by not adequately communicating with [S]eller regarding "extras"; and (3) [B]uyer materially breached the contract by not paying the "extras" invoice within 72 hours?

Buyer's Brief at 4.

Based on the nature of Buyer's arguments, we will address them together. Buyer alleges: "[T]he trial court had two distinct and independent bases for denying money damages or specific performance: (1) that Buyer's alleged failure to communicate about 'extras' clearly was a material breach;

- 4 -

and (2) that the communication issues created a 'mutual mistake' justifying voiding the contract." Buyer's Brief at 22. Buyer first argues that the trial court *sua sponte* raised defenses that Seller never relied on and did not raise — in a new matter to her counterclaims — specifically, Buyer's purported failure to communicate and the "mutual mistake" doctrine. ***See id.*** at 23. She states that "Seller's only argument was that he was entitled to terminate the [Agreement of Sale c]ontract for non-payment of the 'extras' invoice." ***Id.*** at 26-27. Buyer alleges the "court came up with [these defenses] **after** the close of evidence and the parties' opportunity to submit post-trial briefing." ***Id.*** at 23 (emphasis in original).

Next, Buyer complains that none of the defenses raised by the trial court had merit. ***See*** Buyer's Brief at 27. She states there was no material breach on her part for two reasons: (1) she did not breach the contract "at all" as she had no obligation to pay the "extras" invoice within "Seller's invented 72-hour deadline;" and (2) and even if she were obliged, any breach was not material. ***Id.*** In support of her "no breach" argument, Buyer maintains that because the contract had no deadline for the payment of an "extras" invoice, "the law implies that performance is due within a reasonable time[,]" and "a six-day deadline was not reasonable." ***Id.*** at 28 (citations and quotation marks omitted). Moreover, she states the "course of the parties' dealings also supports [the] conclusion" that the deadline was unreasonable because

> Seller issued the very first 'extras' invoice about 28 months after the parties entered into the [Agreement of Sale c]ontract. Seller's

- 5 -

own testimony indicate[d] that he incurred some additional costs for 'extras' that he bore for [two] years. Yet it was never important enough to him to bill for them.

*Id.* at 29. Moreover, she asserts that based on his own testimony, Seller "had not incurred any costs for three-quarters of the 'extras' invoice[.]" *Id.* (emphasis omitted).

As for her contention that even if there were a breach, it was not a material failure of performance. Buyer's Brief at 30. In support of her argument, she relies on the five-factor materiality test set forth in *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 468 (Pa. Super. 2003).[1] Buyer argues that "[n]one of these factors support a finding that a delay in payment of an

_____

[1] The five factors for determining materiality in a breach of contract issue, as set forth in *Widmer*, are as follows:

a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;

c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Widmer Eng'g, Inc.*, 837 A.2d at 468 (citations omitted)

'extras' invoice was material." Buyer's Brief at 31. Buyer specifically addresses the factors as follows: (1) Seller "would not be deprived of the benefit that he reasonably expected[,]" meaning the $400,000 for the sale of the Property; (2) Seller "could be 'adequately compensated' for any delay" because he "could get interest to compensate him for delay in payment[;]" (3) "a finding of material breach would cause complete forfeiture of what Buyer bargained for" because "Seller's termination purports to destroy Buyer's right to [purchase the Property] even though she paid $15,000 for it[;]" (4) Seller did not give Buyer an opportunity to cure the dispute when Buyer indicated she "was ready, willing, and able to close[;]" and (5) "Seller's conduct [did] not comport with good faith and fair dealing." *Id.* at 31-32.

Moreover, Buyer alleges that "[i]f this Court [were to reach] the purported 'miscommunication' defense even though the trial court raised that defense *sua sponte*, it is meritless." Buyer's Brief at 34. She further states that any miscommunication between the parties did not constitute a breach of contract. *Id.* at 35. Buyer contends the Agreement of Sale contract was "simple" — "Seller could require deposits for 'extras'[ and he] had no obligation to provide 'extras' absent the deposit." *Id.* She then suggests that rather than apply the "plain language" of the contract, "the trial court read into the contract a new provision calling for Buyer to clearly communicate an 'extras' demand — and that somehow the failure to comply could be a basis to void the Contract." *Id.* Likewise, Buyer states that even if there were

obligation to communicate, she did not breach the provision, and in the event she did, it was immaterial pursuant to the **Widmer** five factors. **Id.** at 35-38.

Lastly, Buyer argues that the doctrine of "mutual mistake" does not apply to the present matter. Buyer's Brief at 39. Buyer notes that the doctrine concerns mistakes relating to assumptions on which the contract was made. **Id.** She states: "All of the issues that the trial court raised involved the performance of the contract. Those are not factual assumptions made at the 'time of formation' of the [c]ontract." **Id.** (emphasis omitted).

Our standard for reviewing non-jury verdicts is as follows:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

**Ferraro v. Temple Univ.**, 185 A.3d 396, 401 (Pa. Super. 2018) (citation omitted). "The court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." **Hart v. Arnold**, 884 A.2d 316, 331 (Pa. Super. 2005) (citation and quotation marks omitted).

"To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Hart*, 884 A.2d at 332 (citations omitted). In addressing contract interpretation, this Court has stated:

> When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding. The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used.

*Habjan v. Habjan*, 73 A.3d 630, 640 (Pa. Super. 2013) (citations omitted). "Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." *Hart*, 884 A.2d at 332. "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." *Id.* (citation omitted).

Here, in rendering its verdict, the trial court made several findings. First, the court determined the following:

> This Court finds that overwhelming and credible evidence confirm that both parties failed to effectively communicate with each other, both failed to comply with contract expectations and compliance requirements, mutually departed from contract obligations and failed to act within standards of good faith and fair dealing. To various degrees, both parties failed to timely communicate with each other and failed to act pursuant to the

standards of fair dealing, nor had a "meeting of the minds" as to what the contract required.

Verdict, 2/1/22, at 4. The court further stated:

Evidence supports the finding that both parties caused a breach of contract, and mutually did not do what he or she had agreed to do under the contract. Both parties prevented the other from timely performing the obligations of the contract. The parties obviously are not of the same 'meeting of the minds' as to performance of the contract.

*Id.* The court then noted that the "conduct of both parties . . . rises to the level of mutual mistake or mutual misconception." *Id.*

In support of its conclusions, the trial court first noted that the Agreement of Sale provided only that Seller will require non-refundable deposits for any "extras" there were not signed off on or agreed to in the final plans and specifications sheet. The court pointed out that the contract did not provide a timeframe in which such payments shall be made or state whether items would be paid for before or after they are installed. The court found that as a result, the language was patently ambiguous. The court also observed that it may construe the terms against the drafter (here, the Buyer's realtor) when a contract is patently ambiguous. Nevertheless, here, the court reasonably concluded the parties' intent was that Buyer would clearly make requests for any extras beyond what was on the specifications sheet and Seller would expect and could demand payment for those extras. *Id.* at 4-5.

Subsequently, in its Rule 1925(a) opinion, the court explained its rationale for determining that neither party was entitled to relief based on (a)

- 10 -

patent ambiguity and (b) a material breach of the contract. Regarding patent ambiguity, the court stated:

> In his Complaint, [Seller] stated that "As a result of [Buyer]'s failure to pay the required Additional Deposits pursuant to Section 32(B)(2) of the Agreement of Sale, [Seller] terminated the Agreement of Sale[s] for cause." **See** [Seller]'s Complaint, ¶ 18, July 13, 2020.
>
> Section 32(B)(2) states: "Seller will require nonrefundable deposits for any 'extras' that were not signed off on or agreed on in the final plans and Specs." **See** [Seller]'s Complaint, Exhibit A, July 13, 2020.
>
> [Seller] requested payment for extras incurred to date on September 12, 2019, over two years after the original Agreement of Sale was signed and after significant renovation work had been done at the Property. Seven days later, [Seller] provided notice to [Buyer] that he was terminating the Agreement of Sale. This chain of events formed the basis for [Seller]'s breach of contract claim against [Buyer]. This Court's discretion was thus applied to the question of whether [Buyer]'s failure to remit payment before [Seller] terminated the Agreement of Sale seven days later, constituted a breach of contract. To do that, this Court considered the language in the contract itself and found it to be patently ambiguous.
>
> Patent ambiguity appears "on the face of the [document]" and results from "defective or obscure language." **In re Wilton**, 921 A.2d 509, 513 [(Pa. Super. 2007),] citing **Krizovensky v. Krizovensky**, , 624 A.2d 638 ([Pa. Super.] 1993).
>
> In the case of patent ambiguity, it is up to the Court to decide what the parties intended. The Court can construe the terms against the drafter. **Enter. Bank v. Frazier Family [L.P.]**, 168 A.3d 262, 265 [(Pa. Super. 2017)]. [Buyer]'s agent drafted this contract. Even so, the Court can reasonably conclude that the parties' intent was that [Seller] would clearly make requests for any extras beyond what was on the specifications sheet and that [Seller] would expect and could demand payment for such extras. The "extras" language in the Agreement of Sale appears in Section 32 with other such add-on language, including that Buyer and Seller will sign off on the "spec" sheet within 72 hours

- 11 -

of receiving; Seller will pay real estate agent's commission, and that the sale was contingent on property taxes not exceeding $12,000. *See* [Seller]'s Complaint, Exhibit A, July 13, 2020. It is simply inconceivable to believe that the parties to this contract, so careful to spell out so many particulars, would leave the request and payment for pricey extras, such as a $14,208 Viking stove, to a casual interpretation.

Until September 12, 2019, [Seller] had not requested payment for any extras nor did [Buyer] offer or tender any payment. *See* N.T. [, 1/10/22, at 170.] However, some of the extras had already been purchased by [Seller] with no reimbursement from [Buyer]. When [Seller] made the demand on September 12, 2019, he asked for payment both for items that had already been purchased and those yet to be purchased. He also stipulated that payment should be made within 72 hours. *See* [Seller]'s Complaint, Exhibit C, July 13, 2020. [Buyer] had no reason to believe that failure to pay within 72 hours would be grounds for Breach of Contract since it was not specified in the Agreement of Sale. [Seller] arbitrarily chose that time limit.

[Buyer] did not immediately remit payment for the items billed on September 12, 2019 nor any time thereafter.

According to testimony, over the course of the project [Buyer] and [Seller] discussed various changes and extras and some requests were made in writing, some via text and others were discussed verbally at the job site. *See* N.T. [at 79.]

This Court determined through analysis of the contract language, and through testimony and pleadings, that the intention of the parties when they signed the Agreement of Sale was that "extras" would be clearly requested and payment would be requested and remitted as the project went on. It is simply not believable to determine that the parties intended at the time they signed the contract for extras requests to be haphazard and informal. There is also nothing in the language or the spirit of this contract to indicate that payment requests would not be made for long periods of time and then payment for items both purchased and not purchased to be demanded over two years after the initiation of the project with a 72-hour time limit for payment. (Testimony of [Seller] confirms the invoice dated September 12, 2019 covered items both already purchased and yet-to-be purchased. *See* N.T. [at 137.] By determining the parties'

intention in drafting the contract, this Court was able to determine that intention was not followed through by either party during the course of the relationship. Therefore, this Court correctly determined that the Contract/ Agreement of Sale that existed between the parties was patently ambiguous.

Trial Ct. Op. at 5-8. The court then expounded on its rationale for finding there was a material breach of the contract as follows:

A material breach is a breach so serious it goes to the "heart and essence of the contract." **UL Transp., Inc. v. Pilot Air Freight Corp.**, 549 962 A.2d 639 ([Pa.] 2009). Pennsylvania law permits the immediate termination of such a contract.

"[W]hen parties to a contract each commit a material breach, the law will give relief to neither." . . . **Cottman Transmission Systems, Inc. v. Dubinsky**, 550 F.Supp. 133, 136 (W.D.Pa. 1982). However, "'[i]f both contracting parties materially breach the contract, recovery, by either party, is limited to that benefit which is in excess of the loss said party has caused by his own breach.'" **Nikole, Inc. v. Klinger**, 304 603 A.2d 587, 594 ([Pa. Super.] 1992).

This Court found that the parties intended for extras requests to be clearly made and for paid for within a timely manner. Neither party adhered to that intention in the over two years between the signing of the Agreement of Sale and the alleged breach by [Buyer]. Therefore, both parties materially breached the contract and relief is not available to either party, with the exception of the return of the deposit monies to [Buyer], as [Seller] is living in the home and benefiting from the improvements made.

This Court denied [Buyer] the relief she requested by finding she contributed to the material breach of the Agreement of Sale. Under this Court's interpretation of the contract's patently ambiguous language, [Buyer] breached the Agreement of Sale by not clearly making requests for extras and by not remitting payment for extras when requested by [Seller], and the breach was material. [Seller] similarly breached the Agreement of Sale by failing to request payments for extras for over two years and then by requesting payment be remitted within 72 hours, an

- 13 -

arbitrary deadline. This Court denied [Seller] the relief he requested related to retention of the $15,000 deposit.

Because [Seller] retains the Property and benefits from the improvements made throughout the construction process, [Buyer]'s recovery is limited to the $15,000 deposit she made toward improvement of the home, in which [Seller] now resides and derives benefit.

This Court determined that both parties committed a material breach of this contract and as such, relief is due to neither.

Trial Ct. Op. at 8-9.

The trial court also touched upon the doctrine of mutual mistake, stating.

This Court finds the conduct of the parties . . . rises to the level of mutual mistake. The true agreement of the parties is interpreted by this Court as laid forth above: that extras would be requested and paid for in a timely and organized manner. The behavior of both parties demonstrates that both parties acted otherwise. According to testimony and pleadings, [Buyer] made requests both verbally and through informal writings, and changed requests, and [Seller' did not request payment until more than two years into their agreement. As such, the doctrine of mutual mistake applies, and this contract can be voided under that doctrine.

A finding of mutual mistake may allow for the contract's rescission if "(1) the mistake relates to an 'essential fact which formed the inducement to [the contract],' and (2) 'the parties [can be] placed in their former position with reference to the subject matter of [the contract.]'" *Murray v. Willistown Twp.*, 169 A.3d 84[, 90 (Pa. Super. 2017),] citing *Vrabel v. Scholler*, 85 A.2d 858, 860 (Pa. 1952); *Gocek v. Gocek*, 612 A.2d 1004, 1006 (Pa. Super. 1992). This case meets these criteria. Payment for items provided for a home-building project is essential to the heart of the contract itself and by providing that neither party owes the other any further duties under the contract, and returning [Buyer]'s deposit monies, the parties will be in the former position

- 14 -

with reference to the subject matter.  [Seller] is living in the home
with his family and [Buyer] has relocated elsewhere in the area.

Trial Ct. Op. at 9-10.

Lastly, the trial court discussed the applicability of the unclean hands
doctrine,[2] opining:

> By awarding the return of the $15,000 deposit, this Court
> exercised its discretion under the Unclean Hands Doctrine to deny
> [Seller] the relief he requested.  [Seller] contributed to the
> material breach of the Agreement of Sale by failing to timely
> request payment for "extras" and by imposing an arbitrary
> deadline for payment for extras[,] some of which had already been
> purchased or provided by [Seller] and some of which had not.

Trial Ct. Op. at 11.

We agree with the trial court's analyses, and conclude that Buyer's
argument fails for the following reasons.  To the extent Buyer claims the trial
court raised certain defenses *sua sponte* and that its verdict hinged on
miscommunications between the parties or the mutual mistake doctrine, we
find she has misconstrued the court's findings.  Indeed, the court points out

---

[2] The Pennsylvania Supreme Court explained the unclean hands doctrine as
follows:

> [A] court may deprive a party of equitable relief where, to the
> detriment of the other party, the party applying for such relief is
> guilty of bad conduct relating to the matter at issue.  The doctrine
> of unclean hands requires that one seeking equity act fairly and
> without fraud or deceit as to the controversy in issue. . . .

***Terraciano v. Dep't. of Transp., Bureau of Driver Licensing***, 753 A.2d
233, 237-38 (Pa. 2000) (citations omitted).

that Buyer's arguments all relate to "the same central issue: the contract language is patently ambiguous requiring this Court to interpret it." Trial Ct. Op. at 4 (footnote omitted). Indeed, in its verdict, the court determined there was a patent ambiguity as to the terms of the contract, stating:

> The Agreement of Sale states only that Seller will require nonrefundable deposits for any "extras" that were not signed off on or agreed to in the final plans and Specs. It does not provide a timeframe in which such payments shall be made or whether items would be paid for before or after they are installed. This language is patently ambiguous.

Verdict at 4.

Relatedly, Buyer ignores the trial court's determination that the ambiguity in the contract contributed to the parties' conduct, which caused a material breach of the contract. **See** Verdict at 4 ("[B]oth parties failed to effectively communicate with each other, both failed to comply with contract expectations and compliance requirements, mutually departed from contract obligations and failed to act within standards of good faith and fair dealing."); **see also** Trial Ct. Op. at 8 ("This Court found that the parties intended for extras requests to be clearly made and for paid for within a timely manner. Neither party adhered to that intention in the over two years between the signing of the Agreement of Sale and the alleged breach by [Buyer]."). Instead, Buyer chooses to focus on the related, but secondary, issues of materiality and defenses.

Moreover, Buyer centers much of her argument on the allegation that she did not breach the contract because she had no obligation to pay the

"extras" invoice within a 72-hour deadline, but overlooks the court's finding that her conduct (as well as Seller's actions) **throughout the two-year period** amounted to a material breach.

Because Buyer's arguments fail to address the trial court's critical finding in her brief, we conclude that she waived any arguments challenging the contract's validity and terms.  *See* Pa.R.A.P. 302(a).  As such, we need not address her remaining claims.  Accordingly, no relief is due.

Judgment affirmed.


*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 2/2/2023*